[No. A102803. First Dist., Div. Three. Mar. 29, 2005.]

THIRD EYE BLIND, INC., et al., Plaintiffs and Appellants, v.
NEAR NORTH ENTERTAINMENT INSURANCE SERVICES, LLC, et al.,
Defendants and Respondents.

1312

1314

**COUNSEL**

Farella Braun & Martel, Dennis M. Cusack, Sandra A. Kearney and Heather A. Steiner for Plaintiffs and Appellants.

Hanson, Bridgett, Marcus, Vlahos & Rudy, Linda E. Klamm, Walter Schneider and Yvette C. Green for Defendant and Respondent Near North Entertainment Insurance Services, LLC.

Andrews & Kurth and Ralph W. Tarr for Defendant and Respondent Provident Financial Management.

**OPINION**

**McGUINESS, P. J.**—When an insured sues its insurer for coverage and also brings negligence claims against its business manager and insurance broker for failing to advise about a policy exemption and failing to obtain additional coverage, are the negligence claims barred as a matter of law if the court rules in the insured's favor on the coverage claim? In this case, after the trial court concluded on a motion for summary adjudication that an insurer breached its duty to defend appellants, respondents filed motions for judgment on the pleadings arguing this ruling negated appellants' negligence claims against them as a matter of law. The trial court agreed and granted the motions without leave to amend, and appellants dispute this ruling on appeal. We conclude the judgment must be reversed because the prior order did not negate an element of the causes of action alleged against respondents. We also conclude attorney fees appellants incurred in pursuing coverage are a recoverable item of damages in their claims against respondents.

## BACKGROUND

Appellants are members and associated corporate entities of the musical performance group Third Eye Blind.[1] During the relevant time period, appellants' business manager, respondent Provident Financial Management (Provident), was responsible for, among other things, assessing the band's insurance needs, facilitating insurance planning and obtaining appropriate insurance policies. Appellants also retained an insurance broker, respondent Near North Entertainment Insurance Services, LLC (Near North), a company they selected based on its claimed expertise in the field of entertainment insurance and risk management.

Respondents obtained a commercial general liability (CGL) insurance policy for appellants from North American Specialty Insurance Company (NAS) covering the period of January 31, 1999, to January 31, 2000. Provident paid premiums on the policy and was responsible for obtaining renewals. Despite their responsibilities and expertise, however, neither Provident nor Near North advised appellants that the NAS policy excluded coverage for some liability under a Field of Entertainment Limitation Endorsement (FELE). The FELE in appellants' policy excludes coverage for personal injury or advertising injury arising out of the "Field of Entertainment Business." Specifically, coverage is excluded for claims of: (1) invasion, infringement or interference of the right to privacy or publicity; (2) copyright or trademark infringement; (3) defamation, except for claims arising out of a public appearance unrelated to the band's professional entertainment work; (4) plagiarism, piracy or unfair competition regarding unauthorized use of others' ideas or works; and (5) breach of contract regarding the band's professional entertainment work.

In January 2000, Third Eye Blind, Inc., fired one of its band members, Kevin Cadogan. Cadogan immediately threatened to sue the band, claiming any further performances it gave under the name Third Eye Blind would violate Cadogan's rights under the Lanham Act. (15 U.S.C. § 1125(a).) Cadogan ultimately filed suit against appellants, and others, in June 2000. In addition to several other claims against individual band members, the complaint in *Cadogan v. Third Eye Blind et al.* alleged appellants had misappropriated Cadogan's right of publicity by making unauthorized use of his name, likeness and goodwill and had violated the Lanham Act by creating public confusion regarding Cadogan's affiliation with the band and his role in

---

[1] Our recitation of facts is based on allegations in the complaint, which we must accept as true in this appeal from a judgment entered on the pleadings. (*Ott v. Alfa-Laval Agri, Inc.* (1995) 31 Cal.App.4th 1439, 1448 [37 Cal.Rptr.2d 790].)

creating or sponsoring the band's music. Cadogan also claimed appellants' continued use of the name Third Eye Blind constituted trademark infringement under the Lanham Act.

Shortly after it was filed, appellants tendered the *Cadogan* complaint to NAS for defense and indemnity. NAS denied the claim a month later, asserting the FELE in appellants' policy excluded coverage for the *Cadogan* complaint's Lanham Act claims and claims alleging a violation of Cadogan's right of publicity. Although appellants sought reconsideration based on case law holding the FELE's language ambiguous, NAS continued to refuse coverage. Appellants therefore proceeded to defend the *Cadogan* suit on their own and ultimately settled the case. Appellants estimate the amount of settlement proceeds paid, combined with attorney fees and costs they incurred, exceeds $3 million.

On March 15, 2002, appellants filed the instant action against NAS and respondents Provident and Near North. The complaint alleged NAS had breached its policy obligations by unreasonably refusing to defend and indemnify appellants in the *Cadogan* case. In addition to breach of contract and declaratory relief claims against NAS, the complaint alleged causes of action against respondents for negligence, breach of implied contract and declaratory relief. Appellants alleged that, despite their claimed expertise in the field of entertainment industry insurance and despite the duties they owed appellants, respondents failed to advise or notify them that the NAS policy contained an FELE, such that an additional errors and omissions insurance policy would be necessary to guarantee full coverage. Appellants further alleged they would have obtained an errors and omissions policy if they had been so advised. The complaint sought general damages from respondents, including "all covered defense costs" appellants had incurred.

In the summer of 2002, appellants and NAS filed cross-motions for summary judgment and summary adjudication regarding NAS's duty to defend the *Cadogan* suit. After two hearings, the court (Hon. A. James Robertson, II) concluded Cadogan's claims against appellants were potentially covered under the CGL policy and NAS therefore had a duty to defend appellants in the *Cadogan* lawsuit. In granting appellants' motion for summary adjudication against NAS, the court also ruled the FELE was ambiguous as applied to the allegations and claims set forth in the *Cadogan* complaint. This court summarily denied NAS's petition for writ of mandate on November 7, 2002, and the trial court denied a motion for reconsideration of the order on December 20, 2002. During this time, counsel for NAS advised appellants' attorney that NAS believed the trial court's rulings were erroneous and NAS planned to appeal any final judgment. Appellants and NAS participated in two mediation sessions in January 2003 and ultimately reached a settlement.

On February 28, 2003, Provident filed a motion for judgment on the pleadings, arguing the complaint did not state a cause of action against it in light of the court's recent summary judgment and summary adjudication orders. Characterizing these orders as a judicial determination that NAS owed appellants a duty to defend the *Cadogan* lawsuit, Provident asserted it could not be held liable on the complaint's claims for breach of implied contract, negligence and declaratory relief because "these claims were alleged as alternative causes of action, and predicated on a finding that the NAS policy did not cover [appellants'] underlying claim." A week later, Near North filed a motion for judgment on the pleadings reciting the same arguments. Both motions requested judicial notice of the court's orders granting appellants' motion for summary adjudication and denying NAS's motion for summary judgment. After a hearing, the trial court (Hon. Ronald Evans Quidachay) granted the requests for judicial notice and granted the motions for judgment on the pleadings without leave to amend. The order explained appellants' causes of action against Provident and Near North no longer stated claims for relief because they were "predicated" on a claim that the NAS policy was insufficient to provide coverage in the *Cadogan* lawsuit, yet the court had found in prior orders that the policy *was* sufficient. Accordingly, the trial court also denied appellants' claim for attorney fees. This appeal followed from the judgment.[2]

## DISCUSSION

In the trial court, " 'A defendant is entitled to judgment on the pleadings if the plaintiff's complaint does not state a cause of action. In considering whether a defendant is entitled to judgment on the pleadings, we look only to the face of the pleading under attack . . . . All facts alleged in the complaint are admitted for purposes of the motion, and the court determines whether those facts constitute a cause of action. The court also may consider matters subject to judicial notice. [Citations.]' [Citations.]" (*Howard Jarvis Taxpayers Assn. v. City of Riverside* (1999) 73 Cal.App.4th 679, 684–685 [86 Cal.Rptr.2d 592].) On appeal, "Review of a judgment on the pleadings requires the appellate court to determine, de novo and as a matter of law, whether the complaint states a cause of action. [Citation.] For purposes of this review, we accept as true all material facts alleged in the complaint. [Citation.]" (*Ott v. Alfa-Laval Agri, Inc., supra,* 31 Cal.App.4th at p. 1448.)

---

[2] A separate appeal from the order awarding costs to respondents (A103968) was dismissed upon stipulation of the parties.

## I. Complaint Alleged Claims Against Respondents
## Independent of Coverage

Appellants argue the trial court erred in granting judgment on the pleadings because they alleged independent causes of action against respondents and the court's prior ruling regarding NAS's duty to defend did not resolve or negate any element of these claims. Respondents, of course, disagree. They contend appellants' claims against them are "precluded" by the NAS ruling because these claims were "predicated" on a finding that the CGL policy did not provide coverage for the *Cadogan* lawsuit. We conclude there are several problems with this argument and the judgment in favor of respondents must be reversed.

First, respondents distort the nature of the claims against them when they rely on language taken out of context from the complaint to argue these claims were predicated on an absence of coverage under the CGL policy. In support of their argument, respondents quote the following paragraph from the introductory section of the complaint (emphasizing the opening clause): "Alternatively, if this Court determines that NAS has no obligation to provide defense or indemnity for the *Cadogan* suit, Plaintiffs seek compensatory damages against Provident and/or Near North Entertainment arising out of their failure to obtain adequate and reasonable insurance coverage, and in particular, an errors and omissions policy." However, read in context, the complaint alleges claims against respondents that are not premised on any conclusions as to the sufficiency of the CGL policy. Indeed, although respondents summarize its allegations this way, the complaint does not simply assert that respondents were negligent because they procured an insufficient policy. Rather, it alleges that, despite their superior insurance knowledge and expertise, respondents failed to notify appellants that the policy contained an FELE—under which coverage for certain events might be excluded—and failed to advise them that an errors and omissions policy would be necessary to cover this potential shortfall. These claims do not depend on an assumption that the CGL policy was deficient. The point is that respondents failed to alert appellants that the FELE would give NAS a viable basis for refusing coverage under some circumstances and, consequently, failed to recommend that appellants purchase errors and omissions insurance to ensure complete, uncontestable coverage.

Based on their oversimplified articulation of the claims against them, respondents proceed to argue that the NAS ruling conclusively established

they fulfilled any duty of care they owed to appellants.[3] In similar fashion, they contend the prior ruling established NAS was fully responsible for appellants' losses. Because respondents did not do something to cause NAS to deny coverage, they argue their conduct cannot be considered a proximate cause of any injury to appellants. But again, these arguments merely knock down straw men while ignoring the actual legal theories alleged in the complaint. Appellants alleged respondents breached their duty to notify appellants of the existence of the FELE and to advise them of the need to obtain errors and omissions insurance to protect them from a potential gap in coverage. Whether respondents failed to give competent advice to appellants is an independent question and does not depend on whether NAS was justified in denying coverage under the CGL policy.[4]

■ Likewise, while it is true the complaint does not allege respondents actively caused NAS to deny coverage, respondents fail to recognize that this is not the only way in which their breach of duty could cause appellants' losses. Appellants allege that if respondents had advised them about the FELE they would have obtained an errors and omissions policy to cover any potentially excluded claims, such as Cadogan's. Because they did not have such a policy to provide clear coverage of the *Cadogan* suit, appellants were forced to assume their own defense, incurring attorney fees, costs and indemnity. The complaint also alleges NAS is responsible for these losses, but the two theories are not mutually exclusive, as respondents argue. Rather, the law recognizes that there may be multiple causes of a plaintiff's injury. " 'It is not essential to a recovery of damages that a defendant's wrongful act be the sole and only cause of the injury; it is sufficient if it be a proximate cause which in the natural course of events produced, either by itself or in conjunction with other causes, the damage. [Citations.]' [Citations.]" (*McDonald v. Plumb* (1970) 12 Cal.App.3d 374, 377 [90 Cal.Rptr. 822]; see also 6 Witkin, Summary of Cal. Law (9th ed. 1988) Torts, §§ 970, 974, pp. 360–361, 365.)

■ Division Two of this court recently rejected a similar causation argument. In *Lombardo v. Huysentruyt* (2001) 91 Cal.App.4th 656, 660 [110 Cal.Rptr.2d 691], an attorney drafted an amendment to name the appellants beneficiaries of a trust. After a probate court found this amendment ineffective, the appellants settled with the probate estate and then sued the attorney for malpractice. (*Id.* at p. 661–662.) However, the trial court concluded no reasonable judge would have found the trust amendment ineffective, and thus

---

[3] Respondents also challenge the validity of allegations that they assumed a special duty of care based on their purported expertise. However, these arguments raise factual questions about the nature of the parties' relationships, and because they were not the basis of the trial court's ruling they are not properly before us.

[4] Respondents' complaint that appellants seek to hold them liable as guarantors for NAS similarly ignores the actual allegations in the complaint.

the probate court's order was a superseding cause of the appellants' alleged damages. (*Id.* at p. 662–663.) On appeal from an entry of nonsuit, the appellate court rejected this reasoning based on hornbook law that " '[a]n independent intervening act is a superseding cause relieving the actor of liability for his negligence only if the intervening act is highly unusual or extraordinary and hence not reasonably foreseeable. [Citation.] . . . .' [Citation.]" (*Id.* at p. 666.) Because the appellants offered evidence to show that a reasonable attorney would have taken steps before execution of the trust amendment to avoid the rejection appellants ultimately suffered in probate court, the probate court's order—even if erroneous—was, for nonsuit purposes, a foreseeable result of the attorney's negligence. (*Id.* at pp. 666–669.) Likewise, here, appellants have alleged that, as a result of respondents' negligent failure to advise them about the FELE and the need for errors and omissions insurance, they suffered the foreseeable harm of having to defend a lawsuit without adequate insurance coverage. Although NAS may have been wrong to deny coverage of the *Cadogan* suit, the complaint alleges this was a foreseeable harm that could have been avoided if respondents had competently advised appellants.

Similar allegations of proximate cause have been found sufficient to withstand a challenge to the pleadings. In *Kurtz, Richards, Wilson & Co. v. Insurance Communicators Marketing Corp.* (1993) 12 Cal.App.4th 1249, 1254–1255 [16 Cal.Rptr.2d 259] (*Kurtz*), the plaintiff (KRW) hired an insurance broker to obtain group insurance for its employees. When KRW later made large claims on its policy due to the serious illness of an employee, the insurer denied coverage, citing an inaccurate certificate KRW had submitted through its broker. (*Id.* at p. 1255.) The insurer sued KRW to rescind the policy, and KRW filed a cross-complaint against the insurer, for breach of contract and other claims, and against the insurance broker and its president for negligence and fraud. (*Id.* at pp. 1255–1256.) Much like the procedural history in the case before us, the broker defendants successfully demurred to the cross-complaint after the trial court granted KRW's motion for summary judgment against the insurer. (*Id.* at p. 1256.) On appeal, the broker defendants maintained it was not reasonably foreseeable that any false information they may have given the insurer would cause the insurer to cancel the policy and bring suit against KRW. (*Id.* at p. 1258.) As support, they cited KRW's own allegations in the cross-complaint that the insurer "used the inaccurate information in the application to 'create a pretense' for cancelling the policy." (*Ibid.*) However, the appellate court concluded the demurrer should have been overruled because the complaint alleged it was "entirely foreseeable" the insurer would seek to rescind the policy on this basis, even if the attempted rescission was not ultimately successful. (*Id.* at pp. 1258–1259.) In an observation that seems equally apt in the present case,

the *Kurtz* court noted: "KRW's challenge to the legality of its insurer's actions does not insulate respondents from liability." (*Id.* at p. 1259.)

Although the precise question under review was different, much of the Supreme Court's analysis in *Jordache Enterprises, Inc. v. Brobeck, Phleger & Harrison* (1998) 18 Cal.4th 739 [76 Cal.Rptr.2d 749, 958 P.2d 1062] (*Jordache*) also supports our conclusion. In *Jordache*, the Brobeck firm defended a client in a lawsuit but did not investigate whether there was potential insurance coverage for the suit. (*Id.* at pp. 744–745.) As a result of the attorneys' alleged negligence, Jordache provided its own defense for several years. (*Ibid.*) In addition, because Jordache delayed tendering its defense to the insurer, the insurer could—and ultimately did—raise a "late notice" defense to coverage. (*Id.* at pp. 745–746.) After Jordache settled a coverage lawsuit against the insurer, it sued Brobeck for legal malpractice. (*Id.* at p. 746.) The issue before the Supreme Court in *Jordache* was when the client suffered "actual injury" for purposes of triggering the statute of limitations on claims against Brobeck. In an analogous argument to the one respondents raise here, Jordache asserted its malpractice claims against Brobeck did not ripen until resolution of the coverage action. (*Id.* at p. 746–747.) Jordache argued, and the Court of Appeal agreed, that the causal connection between Brobeck's negligent advice and Jordache's damages was not established until the trial court issued findings regarding coverage and the late notice defense and Jordache settled with the insurer. (*Id.* at p. 747.) The Supreme Court disagreed, however, based on the nature of the claims Jordache asserted and the alleged damages. (*Id.* at p. 743–744.)

Similar to the claims appellants assert against respondents here, Jordache claimed its attorneys' neglect allowed the insurer to raise an objectively viable defense to coverage. (*Jordache, supra,* 18 Cal.4th at p. 743.) The insurer's assertion of this defense caused Jordache to incur costs to litigate its coverage claims and also reduced those claims' settlement value. In addition, as a result of the attorneys' alleged neglect, Jordache incurred costs in providing its own defense in the third party action for several years. (*Id.* at pp. 743–744.) Likewise here, appellants claim respondents' negligence caused them to incur costs in defending a third party action and in litigating coverage with NAS. Although the trial court here believed a summary judgment ruling on coverage conclusively negated appellants' claims against respondents, the Supreme Court concluded the same detrimental effects Jordache had alleged regarding its attorneys' negligence "were *not* contingent on the outcome of the coverage action." (*Id.* at p. 744, italics added.) The court reasoned: "Ultimately . . . Jordache's insurance coverage litigation could not determine the existence or effect of Brobeck's alleged negligence. As Brobeck notes, the alleged failure to advise Jordache on insurance matters was not at issue in the coverage lawsuits. Thus, the resolution of that

litigation would not determine whether Brobeck breached its duty to Jordache. For the same reason, the coverage litigation could not determine the consequences resulting from Brobeck's alleged breach of duty. The coverage litigation's resolution was relevant to Brobeck's alleged negligence only insofar as it potentially affected the amount of damages Jordache might recover from Brobeck." (*Id.* at p. 753.)

The same is true here. Nevertheless, respondents argue the finding that NAS had a duty to defend appellants in the *Cadogan* suit conclusively negates any liability they might have had for procuring the NAS policy with an FELE attached. While that may be so regarding this particular theory of liability, the finding did not preclude respondents' potential liability for failing to help appellants secure more direct, and certain, coverage through an errors and omissions policy. Indeed, the Supreme Court rejected a similar argument—i.e., that a favorable finding on the "late notice" issue in Jordache's coverage litigation would mean any negligence by Brobeck caused no injury—by observing Brobeck could still be liable for failing to obtain a more timely and certain insurer-funded defense for the client. (*Jordache, supra,* 18 Cal.4th at p. 753.) Thus, "Although the outcome of the coverage litigation may have reduced Jordache's damages, that action could neither necessarily exonerate Brobeck, nor extinguish Jordache's action against Brobeck for failure to render timely advice on insurance issues. (*Laird* [*v. Blacker* (1992)] 2 Cal.4th [606,] 614 [7 Cal.Rptr.2d 550, 828 P.2d 691].)" (*Jordache, supra,* 18 Cal.4th at p. 753.)

Another analogous case that supports appellants' position is *Sindell v. Gibson, Dunn & Crutcher* (1997) 54 Cal.App.4th 1457 [63 Cal.Rptr.2d 594] (*Sindell*). The plaintiffs in *Sindell,* intended beneficiaries of their father's estate, filed a malpractice suit alleging the law firm that prepared the estate documents negligently failed to obtain consent to the distribution from their father's second wife. (*Id.* at p. 1460.) As a result, the plaintiffs were embroiled in litigation with the second wife concerning distribution of the estate's assets. (*Ibid.*) Writing for Division Three of the Second District Court of Appeal, Justice Croskey rejected the law firm's argument that the complaint was premature because the probate litigation had not yet determined whether plaintiffs had suffered any injury. (*Id.* at pp. 1460, 1464–1465.) Instead, the court concluded the plaintiffs had already sustained injury "by virtue of having to litigate issues which, but for defendants' negligence, would have been resolved," and the outcome of the probate litigation was "relevant only to the *amount* of plaintiffs' damages, not to the *fact* of their injury." (*Id.* at p. 1460.)

Respondents seek to distinguish *Jordache* by suggesting the attorneys' negligence actually caused Jordache's coverage litigation, in that the court found Brobeck's neglect gave the insurer an objectively viable defense. (See *Jordache, supra,* 18 Cal.4th at p. 743.) Respondents note the complaint does not allege that anything they did, or failed to do, decreased appellants' rights under the NAS policy. However, once again respondents oversimplify appellants' claims. Just as in *Jordache,* appellants here allege the respondents' negligence caused them to have to spend large sums in suing their insurer for coverage. Had they been properly advised about the FELE in the NAS policy, appellants allege they would have obtained errors and omissions insurance. There is no dispute an errors and omissions policy would have provided clear coverage for the *Cadogan* suit, thus appellants would have had no need to sue NAS and no need to defend themselves in *Cadogan.* Since the very purpose of respondents' hiring was to ensure appellants had adequate insurance coverage, such coverage litigation was a foreseeable result of their alleged negligence in fulfilling this purpose. (See *Sindell, supra,* 54 Cal.App.4th at pp. 1469–1470.)

In short, the complaint properly alleges multiple causes of appellants' losses. (See *Lombardo v. Huysentruyt, supra,* 91 Cal.App.4th at pp. 666–669.) Although the trial court, in ruling on a motion for summary adjudication, concluded NAS had breached its duty because there was a potential for coverage under appellants' CGL policy, this ruling could not absolve respondents of liability for their own alleged negligence in failing to advise appellants about the need for errors and omissions insurance. (See *Kurtz, supra,* 12 Cal.App.4th at p. 1259.) The summary adjudication ruling, and appellants' eventual settlement with NAS, are relevant to the claims against respondents only insofar as they affect the measure of damages appellants may recover and whether appellants properly mitigated their damages. (See *Jordache, supra,* 18 Cal.4th at pp. 744, 753; *Sindell, supra,* 54 Cal.App.4th at p. 1460.) Because the prior ruling did not negate causation, or any other element of appellants' claims against respondents, the trial court erred in entering judgment on the pleadings.

Finally, even assuming the causes of action against respondents could be viewed as alternative pleadings to primary claims alleged against NAS, such that their viability was dependent upon the outcome of the claims against NAS, there are additional reasons why the judgment on the pleadings was not well taken. It is well established that "a party may plead in the alternative and may make inconsistent allegations." (*Adams v. Paul* (1995) 11 Cal.4th 583, 593 [46 Cal.Rptr.2d 594, 904 P.2d 1205]; see also *Crowley v. Katleman* (1994) 8 Cal.4th 666, 690–691 [34 Cal.Rptr.2d 386, 881 P.2d 1083].) However, the trial court dismissed appellants' "alternative" claims based on nothing more than its prior order finding NAS had a duty to defend. In this respect, the judgment on the pleadings was tantamount to a ruling that

appellants were collaterally estopped from arguing they did not enjoy full coverage under the NAS policy for the *Cadogan* suit. Although respondents carefully avoid mentioning the doctrine, their assertions that appellants' claims against them are "precluded" or "barred" by the NAS order raise concerns typically addressed in the context of res judicata or collateral estoppel. But, just as the trial court's NAS ruling was not binding on all parties under the law of the case doctrine—a point Near North concedes on appeal[5]—it also could not have a preclusive effect on claims appellants alleged against respondents for their independent breaches of duty. First, the order granting summary adjudication was not necessarily a final ruling. ■ "While an insured may obtain an early summary adjudication of a defense obligation, the insurer is entitled to seek a contrary ruling at *any time* it acquires the requisite evidence to conclusively eliminate any potential for coverage." (*Haskel, Inc. v. Superior Court* (1995) 33 Cal.App.4th 963, 977–978 [39 Cal.Rptr.2d 520]; see also *id.* at p. 977 [referring to "the ephemeral nature of an interlocutory adjudication of the duty to defend in favor of the insured"]; cf. *C3 Entertainment v. Arthur J. Gallagher & Co.* (2005) 125 Cal.App.4th 1022, 1025–1026 [23 Cal.Rptr.3d 258] [because summary adjudication order finding insurer had a duty to defend was not final, judgment entered in favor of broker based on this order was premature].) Second, the ruling may not have been entitled to collateral estoppel effect because the parties settled before trial. ■ "A settlement which avoids trial generally does not constitute actually litigating any issues and thus prevents application of collateral estoppel. [Citations.]" (*Rice v. Crow* (2000) 81 Cal.App.4th 725, 736 [97 Cal.Rptr.2d 110]; see also *Landeros v. Pankey* (1995) 39 Cal.App.4th 1167, 1172 [46 Cal.Rptr.2d 165] [noting "a consent judgment is not usually given preclusive effect in subsequent litigation on a different cause of action, unless the parties manifest an intent in the consent judgment to give it such preclusive effect"].)

## II. Attorney Fees in Pursuing Coverage May Be Recovered as Damages

In granting respondents' motion for judgment on the pleadings, the trial court also denied appellants' claim for attorney fees in pursuing coverage from NAS. This ruling was erroneous because appellants are entitled to seek such fees as an item of damages caused by respondents' alleged negligence.

■ "Under California law, it is a well-established principle that attorney fees incurred through instituting or defending an action as a direct result of the tort of another are recoverable damages. (*Prentice v. North Amer. Title*

---

[5] Although Near North's motion for judgment on the pleadings asserted the NAS ruling stood as the law of the case, it acknowledges on appeal that this doctrine refers only to a rule of law announced in an *appellate* court decision that must be adhered to in later proceedings. (*Kowis v. Howard* (1992) 3 Cal.4th 888 [12 Cal.Rptr.2d 728, 838 P.2d 250].)

*Guar. Corp.* [(1963)] 59 Cal.2d [618,] 620–621 [30 Cal.Rptr. 821, 381 P.2d 645].)" (*Sindell, supra,* 54 Cal.App.4th at p. 1470.) Attorney fees in this context are to be distinguished from "attorney's fees *qua* attorney's fees," such as those the plaintiff incurs in suing the tortfeasor defendant. (*Brandt v. Superior Court* (1985) 37 Cal.3d 813, 817 [210 Cal.Rptr. 211, 693 P.2d 796].) Rather, when a defendant's tortious conduct requires the plaintiff to sue a third party, or defend a suit brought by a third party, attorney fees the plaintiff incurs in this third party action "are recoverable as damages resulting from a tort in the same way that medical fees would be part of the damages in a personal injury action." (*Sooy v. Peter* (1990) 220 Cal.App.3d 1305, 1310 [270 Cal.Rptr. 151]; see also *Brandt v. Superior Court, supra,* 37 Cal.3d at p. 817.) The "tort of another" doctrine has been applied to permit recovery of attorneys fees resulting from an insurer's tortious conduct (*Brandt v. Superior Court, supra,* 37 Cal.3d at pp. 817–819), and we see no reason why it should not also apply to fees incurred as a result of an insurance broker's alleged negligence. (See, e.g., *Prentice v. North Amer. Title Guar. Corp., supra,* 59 Cal.2d at pp. 620–621 [attorney fees in quiet title action recoverable from negligent escrow holder]; *Sindell, supra,* 54 Cal.App.4th at pp. 1470–1471 [attorney fees recoverable in legal malpractice context]; but see *Lubner v. City of Los Angeles* (1996) 45 Cal.App.4th 525, 534–535 [53 Cal.Rptr.2d 24] [attorney fees not recoverable where defendant's conduct was not a tortious act]; *Sooy v. Peter, supra,* 220 Cal.App.3d at pp. 1313–1314 [attorney fees not recoverable where defendant attorney owed no duty of care to plaintiff].)

As a result of respondents' allegedly negligent failure to advise appellants about the FELE and the need for errors and omissions insurance, appellants were required to sue NAS for coverage. Appellants allege that if they had been competently advised they would have obtained an errors and omissions policy, which would have provided more definite coverage for the *Cadogan* action. Because they had no errors and omissions policy to rely on, appellants were required to litigate coverage with NAS as a direct result of respondents' alleged negligence; thus, the attorney fees and costs incurred in the coverage litigation may be recovered as damages if appellants prevail in their claims against respondents. (See *Sindell, supra,* 54 Cal.App.4th at p. 1471.)

For reasons already discussed, the fact that NAS's denial of coverage *also* caused appellants to incur fees and costs in the coverage litigation does not absolve respondents of their own responsibility for damages proximately caused by their negligence. (See, e.g., *Lombardo v. Huysentruyt, supra,* 91 Cal.App.4th at pp. 666–669.) The trier of fact is presumably capable of apportioning responsibility for these losses among NAS and the respondents. (Cf. *Brandt v. Superior Court, supra,* 37 Cal.3d at pp. 819–820 [in a bad faith action, trier of fact must reduce the attorney fee award against insurer by any amounts attributable to the insured attorney's efforts to obtain an award in excess of benefits owed under the policy].) Nor is there a

problem because the attorney fees were incurred in the same lawsuit in which appellants now seek their recovery. The Supreme Court long ago observed: "In the usual case, the attorney's fees will have been incurred in connection with a prior action; but there is no reason why recovery of such fees should be denied simply because the two causes (the one against the third person and the one against the party whose breach of duty made it necessary for the plaintiff to sue the third person) are tried in the same court at the same time. [Citation.]" (*Prentice v. North Amer. Title Guar. Corp.*, *supra*, 59 Cal.2d at p. 621.) More recently, the high court stated: "The fact that . . . the fees claimed as damages are incurred in the very lawsuit in which their recovery is sought, does not in itself violate [Code of Civil Procedure] section 1021's general requirement that parties bear their own costs of legal representation, though it may make the identification of allowable fees more sophisticated." (*Brandt v. Superior Court*, *supra*, 37 Cal.3d at p. 818.) Allowable attorney fees and costs here must be limited to only those attributable to appellants' pursuit of coverage against NAS, and may not include amounts expended litigating their claims against respondents. With appropriate instructions, we presume the trier of fact is capable of making such an allocation.

## DISPOSITION

The judgment is reversed. Respondents shall bear costs of the appeal.

Pollak, J., and Parrilli, J., concurred.

A petition for a rehearing was denied April 19, 2005, and respondents' petition for review by the Supreme Court was denied July 13, 2005. George, C. J., did not participate therein.