**FIRST DIVISION**
February 11, 2008

No. 1-05-0783

INDUSTRIAL ENCLOSURE          )  Appeal from the
CORPORATION,                  )  Circuit Court of
an Illinois Corporation,      )  Cook County.
                              )
          Plaintiff-Appellant,)
                              )
     v.                       )  No. 98 L 6459
                              )
GLENVIEW INSURANCE AGENCY, INC.,)
an Illinois Corporation,      )  The Honorable
                              )  Stuart A. Nudelman,
          Defendant-Appellee. )  Judge Presiding.

JUSTICE GARCIA delivered the opinion of the court.

The plaintiff, Industrial Enclosure Corporation (IEC), was awarded $567,172 in damages after a jury trial. The defendant, Glenview Insurance Agency, Inc. (Glenview), filed a motion for judgment notwithstanding the verdict contending that the court erred in denying its motion for a directed verdict based on the absence of any evidence that (1) Glenview proximately caused the damages suffered by IEC under its negligence claim, and (2) Glenview breached its duty to IEC in the procurement of the property insurance under its breach of contract claim.

The court granted the motion for judgment notwithstanding the verdict as to each ground. The court also explained that the

jury was improperly instructed as to the duty owed by Glenview to IEC.

The plaintiff appeals that order, contending sufficient evidence was presented at trial to support its claims of breach of contract and negligence. For the reasons that follow, we affirm.

BACKGROUND

The plaintiff, IEC, based in Aurora, Illinois, manufactures industrial boxes. The defendant, Glenview, is an insurance agency located in Glenview, Illinois. Glenview employee Marcus Toral managed IEC's account. John Palmer, IEC's president, was responsible for purchasing IEC's property insurance.

IEC and Glenview first did business in 1992, with Glenview procuring a property insurance policy from Chubb Insurance Company for IEC. During these meetings, Palmer and Toral also discussed the possible purchase of flood insurance. Palmer chose not to purchase flood insurance because IEC's headquarters had never been flooded, though sewer backup and runoff were concerns. The Chubb policy was renewed through 1996. While a flood coverage rider was discussed several times, it was never added to the policy.

In 1996, Palmer and Toral began to shop around for competitively priced coverage. Palmer's brother found an

attractive quote from Amerisure that Chubb Insurance was not willing to meet. At the same time, Toral obtained a quote from The Maryland Insurance Group/Northern Insurance Company (Maryland). Maryland was willing to lower its premium price to win IEC's business.

Palmer accepted the Maryland quote and the policy became effective on June 1, 1996. Palmer testified that based on his conversations with Toral, he expected the coverage limits on the Maryland policy to be comparable to or better than those of the Chubb policy. The policy papers were delivered at the end of July.

On July 17 and 18, the Aurora area experienced rainfall measuring more than 17 inches. Palmer testified that after the storm there was damage to IEC's building and equipment, including several feet of standing water inside the building. An adjuster from Maryland examined the site and determined the occurrence to be outside the coverage of the policy because the damage to the building was caused by floodwater and surface water. In its August 4, 1996, letter, Maryland informed IEC that the areas around the building showed "physical evidence characteristic of general flooding." The letter characterized the water inside the building as "caused directly or indirectly by flood waters from a nearby creek and surface run off that accumulated from

surrounding property on higher ground."  As the policy excluded "[f]lood, surface water, waves, tides, tidal waves, overflow of any body of water, or their spray," Maryland declined coverage of the storm damage as flood related.  IEC believed that the damage inside the building was caused by sewer backup and hired its own experts to prove that.

On November 25, 1996, IEC submitted a proof of loss statement to Maryland totaling $2,294,704.51 for the loss of July 18, 1996, contending the loss was caused by water backup and overflow from a sewer, drain and/or sump pump, coverage it had under the policy.

Maryland advised IEC by letter dated January 15, 1997, that it was denying coverage because it believed that the policy did not provide coverage for IEC's flood-related loss.  The letter stated, "Although the flooding throughout the area no doubt overcharged the sewer system in and around [the IEC] building, significant surface storm water runoff caused the damage at [the IEC] facility."  IEC sued.  After a trial in federal court, a jury returned a verdict against Maryland and awarded IEC approximately $1.1 million in damages, with $167,000 of that amount designated as lost profits.  No appeal was taken.

IEC then filed this action to recover attorney fees and costs in the federal litigation, as well as lost profits and

other expenses that IEC did not recover in the federal action. IEC alleged that Glenview breached its duty to procure an insurance contract consistent with its wishes and that Glenview was negligent as to the Maryland policy it did procure.

After a trial, the jury found for IEC and awarded damages in the amount of $567,162. Glenview filed a motion for a judgment notwithstanding the verdict, arguing that the court erred in denying its motion for a directed verdict because Glenview was not the proximate cause of the damages claimed by IEC and that Glenview owed no duty to IEC to interpret the Maryland insurance policy as to the term "surface water." The trial court granted Glenview's motion, holding that the proximate cause of the damages claimed by IEC was Maryland's wrongful denial of IEC's claim and not any act by Glenview. The trial court also ruled that Glenview did not have a duty to inform IEC that Maryland might determine that flooding caused by surface water would or could nullify the sewer drain coverage. IEC now appeals.

ANALYSIS

A judgment notwithstanding the verdict can only be granted when all the evidence, viewed in the light most favorable to the nonmoving party, so overwhelmingly favors the movant that no contrary verdict based on that evidence can stand. Maple v. Gustafson, 151 Ill. 2d 445, 453, 603 N.E.2d 508 (1992), citing

5

No. 1-05-0783

Pedrick v. Peoria & Eastern R.R. Co., 37 Ill. 2d 494, 510, 229 N.E.2d 504 (1967). This court applies a de novo standard to our review of decisions on motions for judgment notwithstanding the verdict. McClure v. Owens Corning Fiberglas Corp., 188 Ill. 2d 102, 132, 720 N.E.2d 242 (1999).

I.  Breach of Contract Claim

IEC first contends that Glenview's sale of the Maryland policy to IEC without an explanation of the differences between the coverages offered by Maryland and Chubb Insurance violated the parties' contract to procure insurance. IEC contends that Glenview breached their contract to procure insurance with coverage for sewer and drain backup not "impaired by flooding caused by surface water or general flooding."

An insurance broker, in general, must exercise reasonable skill and diligence when the agent negotiates and procures an insurance policy according to the wishes of the client. Pittway Corp. v. American Motorists Insurance Co., 56 Ill. App. 3d 338, 346-47, 370 N.E.2d 1271 (1977). The broker must act with competence and skill when procuring the policy. Pittway, 56 Ill. App. 3d at 347. IEC alleges that by not specifically procuring a policy that included a sewer and drain backup rider, Glenview did not procure a suitable policy and thus breached the contract.

However, in a May 29, 1996, fax from Toral to Palmer

6

comparing price and coverage between Chubb, Amerisure and Maryland, the attachment highlighting Maryland's coverage states that backup of sewers and drains is covered under the Maryland policy provisions.

While the water provision in the Maryland policy procured on behalf of IEC excluded damage due to floodwater and surface water caused by flooding, a similar exclusion for damage caused by sewer backup was expressly deleted. An additional coverage endorsement for the Maryland policy procured on behalf of IEC expressly deleted Exclusion 1.g (3), which excluded coverage for damage caused by "[w]ater that backs up or overflows from a sewer, drain or sump." Thus, the Maryland policy issued to IEC provided coverage for sewer and drain backup. This conclusively negates IEC's argument that Glenview did not comply with its wishes in procuring a property insurance policy from Maryland with sewer and drain backup coverage.

Nonetheless, IEC maintains that trial evidence was presented that Glenview did not procure a policy with sufficient specificity for sewer backup and runoff, thus allowing for denial of coverage by Maryland.

However, the Toral-to-Palmer fax, with attached coverage highlights of the three policies being considered by IEC, states that drain and sewer backup will be covered by the Maryland

7

policy presented to IEC. The fax also demonstrates that Toral laid out the comparison of the price and coverage of the policies offered by the Amerisure, Chubb and Maryland, for Palmer's review.

The denial of coverage by Maryland for the water damage suffered by the IEC facility was not based on the absence of coverage for sewer backup. Rather, the problem was that the Maryland adjuster characterized the damage to IEC's building as predominately flood damage rather than damage from sewer backup. However, the end result of the federal lawsuit was that the jury conclusively (in the absence of an appeal) determined that the water-related damage to the IEC building was covered by the Maryland policy and that Maryland acted in error when it denied IEC's claim.

Because coverage was found to exist, Glenview complied with the wishes of IEC in procuring the Maryland policy. Though IEC had to sue Maryland to force compliance with the policy, ultimately, the coverage that IEC sought was provided by the Maryland policy. Glenview fulfilled the contract by procuring insurance in accordance with IEC's wishes.

IEC maintains that although Maryland "was wrong to deny coverage to IEC, it was foreseeable that Glenview's failure to advise IEC of the surface water exclusion and to procure an

8

adequate policy for IEC would subject IEC to harm."  While IEC persists that it was the inclusion of "surface water" that provided the basis for Maryland's denial of coverage, Maryland's August 4, 1996, letter makes clear that is not the case. Maryland's adjuster noted that the area "immediately surrounding your business [showed] physical evidence characteristic of general *flooding*. *** [T]he policy did not include coverage for general *flooding*. * * * I *** pointed out the policy exclusions concerning *flood* and surface waters."  (Emphasis added.)  Thus, Maryland's denial did not turn on the application of the term "surface water" to the occurrence as IEC contends, but on the "*exclusions* concerning flood and surface waters."  (Emphasis added).  As it is undisputed that IEC declined repeatedly any coverage for flood damage, we find no basis for IEC's claim that had "surface water" not been listed in the exclusion, Maryland would not have denied coverage for the damage to the IEC facility.

As authority for its position that this case concerns multiple proximate causes for IEC's claim of loss based on the denial of coverage by Maryland, Maryland's wrongful denial being one such proximate cause and Glenview's breach another, IEC cites Third Eye Blind, Inc. v. Near North Entertainment Insurance Services, LLC, 127 Cal. App. 4th 1311, 26 Cal. Rptr. 3d 452

(2005) as support. We find Third Eye Blind inapposite. Third Eye Blind is, as IEC's counsel noted at oral argument, a "gap in coverage" case.

In Third Eye Blind, a music band contracted with its business manager and an insurance broker to obtain a commercial general liability insurance policy for the group. Third Eye Blind, 127 Cal. App. 4th at 1314, 26 Cal Rptr. 3d at 454-55. The problem with the policy obtained on the group's behalf was that it "excluded coverage for some liability under a Field of Entertainment Limitation Endorsement (FELE)." Third Eye Blind, 127 Cal. App. 4th at 1315, 26 Cal. Rptr. 3d at 455. The FELE exclusion pertained to the very risk the band's professional entertainment work exposed them to. The court noted that the appellants "alleged they would have obtained an errors and omission policy if they had been so advised." Third Eye Blind, 127 Cal. App. 4th at 1316, 26 Cal. Rptr. 3d at 456. As we have already determined that the Glenview complied with the wishes of IEC in procuring the Maryland policy, Third Eye Blind, as a "gap in insurance" coverage case, provides no guidance here.

## II. Breach of Duty Claim

In an action for negligence, the plaintiff must establish that the defendant owed the plaintiff a duty of care, which was breached, proximately causing an injury. See Marshall v. City of

Centralia, 143 Ill. 2d 1, 6, 570 N.E.2d 315 (1991). Whether a defendant owes a duty of care to a plaintiff is a question of law. Marshall, 143 Ill. 2d at 6. In the context of an insurance broker procuring insurance on behalf of the plaintiff, "the primary function of an insurance broker as it relates to an insured is to faithfully negotiate and procure an insurance policy according to the wishes and requirements of his client." Pittway Corp. v. American Motorists Insurance Co., 56 Ill. App. 3d 338, 346-47, 370 N.E.2d 1271 (1977).

As the trial court made clear in its consideration of Glenview's motion for a directed verdict, IEC's theory of recovery against Glenview turned on the application of the term "surface water" as part of the "flood" exclusion in the Maryland policy. While IEC argues that Glenview should have anticipated Maryland's denial of coverage based on the "surface water" exception in the policy, there is nothing in the record to support IEC's underlying contention that Glenview had a duty to advise IEC that such an exception would nullify coverage under the sewer backup provision. Nor was any evidence presented that such a nullification would have been known to an insurance broker exercising the requisite "competence and skill" the law places on an insurance broker. Pittway, 56 Ill. App. 3d at 347. In fact, the record makes clear that to the extent Maryland denied

coverage based on the "surface water" term contained in the flood exclusion, coverage for the damages suffered by IEC was provided under the additional coverage endorsement for water backup from sewer, drain and/or sump pump of the Maryland policy procured by Glenview.

As in Pittway, IEC "essentially seeks to impose upon insurance brokers the duty to advise their customers of the import and meaning of the provisions of the insurance policies which have previously been faithfully procured according to the customer's requirements." Pittway, 56 Ill. App. 3d at 347. No such duty exists under Illinois law. "[T]he burden was on plaintiff to know the import and meaning of the insurance contract *** which it accepted." Pittway, 56 Ill. App. 3d at 347. No evidence of negligence based on the breach of any duty owed by Glenview to IEC as to the Maryland policy was presented. The trial court properly entered judgment for Glenview notwithstanding the jury's verdict as to duty claim as well.

## CONCLUSION

The circuit court properly entered judgment notwithstanding the verdict because there was no evidence that Glenview proximately caused the damages suffered by IEC; nor was there any evidence that Glenview breached its duty to IEC in the procurement of the property insurance.

12

Affirmed.

CAHILL, P.J., and WOLFSON, J., concur.