Filed 6/1/15  Mills Potoczak & Co. v. Habersham Funding CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| MILLS POTOCZAK & COMPANY et al., | |
| Cross-complainants and Respondents, | C074955 |
| v. | (Super. Ct. No. 34200900056531CUPOGDS) |
| HABERSHAM FUNDING LLC, | |
| Cross-defendant and Appellant. | |

Appellant Habersham Funding LLC (Habersham) challenges the denial of its motion for contractual attorney fees and costs based on a fee-shifting clause in an escrow agreement for which respondent Mills, Potoczak, & Company (Mills) served as escrow agent.  The trial court denied the motion on grounds the escrow agreement was not implicated in the cross-complaint filed by Mills against Habersham.  Thus, the trial court concluded Habersham had no basis for claiming contractual attorney fees and costs after Mills dismissed its cross-complaint.

1

On appeal, Habersham contends (1) the escrow agreement was the subject of Mills's cross-complaint, (2) Habersham is the prevailing party in this case, and (3) Mills failed to adequately challenge the motion for attorney fees and costs in the trial court. Under the same contractual fee shifting provision, Habersham requests its attorney fees on appeal.

We affirm the denial of Habersham's motion for attorney fees and costs because the causes of action asserted in Mills's cross-complaint did not implicate the escrow agreement. The escrow handled by Mills closed without complaint by any party to the escrow agreement. Thus, we also deny Habersham's request for contractual attorney fees on appeal based on the same agreement.

FACTUAL AND PROCEDURAL HISTORY

*The 2006 Ferree Escrow Agreement*

This case arises out of investor purchases of "viatical life settlements," which are fractionalized interests in life insurance policies sold by individuals owning policies insuring the lives of elderly or terminally ill individuals. Investors bought their interests at a discount from the face value of the life insurance policies based, in large part, on the estimated life expectancy of elderly or terminally ill individuals. One such purchase involved a sale by Robert and Edward Ferree, who were beneficiaries of a policy insuring the life of Sarah J. Ferree. The sale was carried out by a 2006 escrow agreement (2006 Ferree escrow agreement) signed by Robert and Edward Ferree (collectively as viator), Habersham (as purchaser of the life insurance policy), and Mills (as the escrow agent for the transaction).

The 2006 Ferree escrow agreement recited that "Viator and Purchaser wish to establish an escrow with an independent escrow agent pursuant to which the funds due from the Purchaser to the Viator for the sale of the Policy (the 'Purchase Price') shall be

2

escrowed and, if all conditions are met, distributed to the Viator." Under the escrow agreement, Mills's role consisted of verifying the life insurance policy belonging to the Ferrees, receiving funds from Habersham, and transmitting those funds to the Ferrees once all life insurance documents from the Ferrees were completed and transferred to Mills. Paragraph 8 of the escrow agreement expressly limited Mills's duties by providing: "With respect to the Escrow Agent's duties and rights as Escrow Agent, it is agreed as follows. [¶] 8.1. The Escrow Agent undertakes to perform only such duties as are expressly set forth herein. [¶] 8.2. In performing its duties hereunder, Escrow Agent shall not incur liability to Purchaser or to the Viator for any damages, losses or expenses which either party may sustain or incur, unless the same is a direct result of the gross negligence or intentional misconduct of Escrow Agent. . . . The Viator understands that Escrow Agent is not representing either party in this transaction, is not rendering any legal advice or services to either party, and has no responsibility with regard to this transaction other than to comply with the terms of this Escrow." Paragraph 13 of the escrow agreement provides attorney fees as follows: "If this Escrow is made the subject of litigation, the prevailing party shall be entitled to reasonable attorneys' fees and costs from the other party."

The Ferrees, Habersham, and Mills performed their duties as required under the escrow agreement. Thus, the Ferrees received the purchase funds for the life insurance policy, Habersham received the policy, and escrow closed in April 2006.

### *Plaintiffs' Complaint and Mills's First Amended Cross-complaint*

The investors who bought the viatical settlements did not realize their expected gains because the insured lived longer than estimated at the time of the sale of the life insurance policies. More than 70 purchasers of the viatical settlements filed a complaint against various defendants. As the trial court recounted, Mills "was among the various

3

defendants named in the lawsuit and filed its own cross-complaint against various others, including [Habersham], seeking relief based on theories of equitable indemnity, tort of another and negligence. [Mills] alleges that [Habersham] was involved in four of the 13 life policies purchased by plaintiffs and had selected or purchased the life expectancy reports for those policies."[1]

### *Habersham's Demurrer*

Habersham demurred to Mills's first amended cross-complaint. The demurrer asserted the plaintiffs' complaint was based on allegations they had purchased viatical settlements due to fraudulent information from Assured Benefits Corp. (Assured) and Provident Capital Indemnity, Ltd. (Provident). Plaintiffs asserted Assured, in particular, issued marketing materials based on the evaluations of a person who was not even a physician. Plaintiffs also alleged Assured and Mills failed to warn the investors about risks involved in the viatical settlement investments. Mills was also alleged to have collected insufficient funds to pay the premiums that needed to be paid during the insureds' lifetimes.

Mills cross-complained against Habersham for equitable indemnity, tort of another, and negligence. According to Habersham's demurrer, the first amended cross-complaint rested entirely on a theory that all cross-defendants aided and abetted each other in a scheme to wrong the plaintiffs. Habersham objected that it "played no part in the sale and marketing of the policies from Assured and Provident to Plaintiffs, nor did it play any part in Mills['s] own alleged misconduct *following the sale* of the policies to Plaintiffs." (Italics changed.) In Habersham's view, "Seeking to obfuscate the existence

---

[1] As did the trial court, we refer to the first amended cross-complaint, which was the operative cross-complaint against Habersham before Mills dismissed its action. The appellate record does not contain the original cross-complaint.

4

of this fundamental impediment, the Cross Complaint lumps Habersham (and the other cross-defendants) into a grand marketing and sale scheme of the policies to Plaintiffs by speaking in sweeping and conclusory group-based allegations of conspiracy, agency and aiding and abetting." Habersham's demurrer reiterated that "all the allegations against Habersham are improper, 'group' allegations made against multiple cross-defendants at one time." Thus, Habersham denied the negligence claim on grounds that "[w]ithout any allegation of a representation made to Mills by any of the 'Sellers,' including Habersham, the negligence claim fails to establish that any duty existed between Mills and Habersham upon which a negligence claim could give rise."

The trial court sustained the demurrer as to the cause of action for negligence, and Mills chose not to replead the negligence claim.

### *Habersham's Motion for Attorney Fees and Costs*

As a result of mediation, Mills settled plaintiffs' claims in the underlying complaint. Mills then dismissed its cross-complaint against Habersham. After Mills dismissed its cross-complaint, Habersham filed a motion for contractual attorney fees and costs. The only contractual fee-shifting provision cited by Habersham was that in the 2006 Ferree escrow agreement. Mills opposed the motion on grounds the Ferree escrow agreement did not provide contractual attorney fees for the causes of action asserted in the first amended cross-complaint, and the claimed fees were excessive. The trial court denied the motion, concluding the operative cross-complaint did not implicate the 2006 Ferree escrow agreement. The trial court further found, in any event, Habersham claimed an excessive amount of attorney fees.

From the denial of the motion, Habersham timely filed a notice of appeal.

DISCUSSION

### *Contractual Attorney Fees under the 2006 Escrow Agreement*

Habersham contends it is entitled to contractual attorney fees under the 2006 Ferree escrow agreement.  We are not persuaded.

#### A.

### *Standard of Review*

"Attorney fees are not recoverable as costs unless a statute or contract expressly authorizes them."  (*Sessions Payroll Management, Inc. v. Noble Const. Co., Inc*. (2000) 84 Cal.App.4th 671, 677.)  The corollary is that a prevailing party may recover attorney fees in an action on a contract containing an attorney fee shifting provision.  (Civ. Code, § 1717, subd. (a); *Hsu v. Abbara* (1995) 9 Cal.4th 863, 871-872.)  We review the question of whether an action is on a contract with a fee shifting provision de novo as a question of law.  (*Sessions Payroll Management* at p. 677.)

#### B.

### *The Scope of Fee-shifting in the 2006 Ferree Escrow Agreement*

"[T]he question of whether to award fees on other noncontract claims depends upon the scope of the contractual attorneys' fee provision."  (*Exxess Electronixx v. Heger Realty Corp.* (1998) 64 Cal.App.4th 698, 713.)  To answer this question, we apply the traditional rules of contract interpretation to the attorney fee provision in the contract.  (*Id.* at p. 709.)  The fact that Mills's first amended cross-complaint included a cause of action for negligence requires us to consider whether the 2006 Ferree escrow agreement supports fee shifting even for tort claims.  "If a contractual attorney fee provision is phrased broadly enough, . . . it may support an award of attorney fees to the prevailing party in an action alleging both contract and tort claims:  '[P]arties may validly agree that the prevailing party will be awarded attorney fees incurred in any litigation between

6

themselves, whether such litigation sounds in tort or in contract.' " (*Santisas v. Goodin* (1998) 17 Cal.4th 599, 608 (*Santisas*), quoting *Xuereb v. Marcus & Millichap, Inc.* (1992) 3 Cal.App.4th 1338, 1341.)  In any event, "the mutual intention of the parties at the time the contract is formed governs interpretation." (*Santisas*, at p. 608.)

The 2006 Ferree escrow agreement states that "[i]f this Escrow is made the subject of litigation, the prevailing party shall be entitled to reasonable attorneys' fees and costs from the other party." The recital of agreement defines " 'Escrow' " to mean the "Escrow Agreement" between the Ferrees, Habersham, and Mills. Thus, the escrow agreement constrains attorney fee shifting to litigation involving the reciprocal rights and duties articulated in the escrow agreement. The consequence of this constraint is that attorney fee shifting is limited to litigation between the Ferrees, Habersham, and Mills. Thus, Habersham cannot rely on the Ferree escrow agreement to recover attorney fees incurred in defending against claims arising out of viatical settlement purchases other than the policy for which Sarah J. Ferree was the insured.

Even as to litigation related to purchase of the Ferree life insurance policy, the 2006 escrow agreement limits attorney fees to the duties arising under that agreement. The Ferree escrow agreement required Mills to act as escrow agent, the Ferrees to provide documents, and Habersham to tender funds. Habersham does not dispute escrow closed in April 2006 or that each party to the agreement properly performed the obligations *under the agreement.* The cross-complaint did not seek to vindicate any rights or obligations in the 2006 escrow agreement but to assert indemnity for torts committed that were unrelated to the escrow of the Ferree life insurance purchase. As Habersham's own demurrer asserted, Mills's first amended cross-complaint was based on an aiding and abetting theory that cross-defendants made fraudulent marketing representations to the investors in the viatical settlements. As a judicial admission in its

7

pleading, Habersham may not attempt to recast its characterization of the first amended cross-complaint. (*Valerio v. Andrew Youngquist Construction* (2002) 103 Cal.App.4th 1264, 1271; *Myers v. Trendwest Resorts, Inc*. (2009) 178 Cal.App.4th 735, 746.) Thus, the legal theory underlying the cross-complaint focused on alleged torts unrelated to the escrow services provided by Mills or the obligation to tender funds by Habersham. Whether or not the cross-defendants conveyed misleading marketing materials to the plaintiffs, the obligation to refrain from engaging in such fraud arises out of tort law independent of the duties enumerated in the 2006 Ferree escrow. Thus, Mills's cross-complaint did not implicate the fee-shifting provision in the 2006 Ferree escrow agreement.

Habersham emphasizes that the first amended cross-complaint refers to "certain life settlement investments" that "were designed, created, marketed, and sold in the State of California" by cross-defendants, including Habersham. Asserting the Ferree life insurance purchase was among these life settlement investments, Habersham reasons the 2006 Ferree escrow agreement (along with its fee-shifting clause) must be the subject of the cross-complaint. Under Habersham's reasoning *any* litigation concerning the Ferree life insurance policy would be subject to the fee-shifting provision of the 2006 escrow agreement. We disagree. The cross-complaint focused on duties imposed by California law to refrain from committing torts of deceit and fraud on plaintiff investors. The cross-complaint did not allege any violation of any duty specified in the 2006 Ferree escrow agreement. The 2006 Ferree escrow agreement expressly limited Mills's duties to those of escrow agent and Habersham as purchaser of the viatical settlement. Mills had no duty under the agreement to check the accuracy of any representation regarding life expectancy of the insured nor any marketing materials issued by Habersham.

8

Consequently, the trial court correctly concluded the cross-complaint did not implicate the 2006 Ferree escrow agreement.

Habersham argues Mills signaled the availability of contractual attorney fees by claiming attorney fees in the first amended cross-complaint. Contrary to Habersham's assertion, the first amended cross-complaint does not make any claim for *contractual* attorney fees. Instead, the first amended cross-complaint claimed attorney fees as part of the measure of *tort* damages. " 'Under California law, it is a well-established principle that attorney fees incurred through instituting or defending an action as a direct result of the tort of another are recoverable damages. (*Prentice v. North Amer. Title Guar. Corp.* [(1963)] 59 Cal.2d [618,] 620–621.)' (*Sindell* [*v. Gibson, Dunn, & Crutcher* (1997)] 54 Cal.App.4th [1457,] 1470.) Attorney fees in this context are to be distinguished from 'attorney's fees qua attorney's fees,' such as those the plaintiff incurs in suing the tortfeasor defendant. (*Brandt v. Superior Court* (1985) 37 Cal.3d 813, 817.) Rather, when a defendant's tortious conduct requires the plaintiff to sue a third party, or defend a suit brought by a third party, attorney fees the plaintiff incurs in this third party action 'are recoverable as damages resulting from a tort in the same way that medical fees would be part of the damages in a personal injury action.' (*Sooy v. Peter* (1990) 220 Cal.App.3d 1305, 1310; see also *Brandt v. Superior Court, supra*, 37 Cal.3d at p. 817.)" (*Third Eye Blind, Inc. v. Near North Entertainment Insurance Services, LLC* (2005) 127 Cal.App.4th 1311, 1324-1325.) Thus, Mills's claim for attorney fees as part of tort damages does not establish the availability of contractual attorney fees.

Habersham next argues the 2006 Ferree escrow agreement was implicated by an affirmative defense raised by Habersham. Habersham's answer asserted the pertinent affirmative defense as follows: "Cross-Defendant alleges on information and belief that as a result of the Cross-Complaint it has been required to retain the undersigned counsel

9

to whom they are obligated to pay a reasonable fee, for which Cross-Defendant, if it prevails, is entitled to recover pursuant to its contract with Cross-Plaintiffs." Relying on this assertion of an affirmative defense, Habersham now argues that "[e]ven if Habersham had only defended against [Mills's] Cross-Complaint by pointing to the Agreement, Habersham would still be entitled to its attorneys' fees . . . ." In so arguing, Habersham quotes a decision in which the California Supreme Court confirmed the availability of contractual attorney fees "when a person sued on a contract containing a provision for attorney fees to the prevailing party defends the litigation 'by successfully arguing the inapplicability, invalidity, unenforceability, or nonexistence of the same contract.' " (*Santisas, supra*, 17 Cal.4th at p. 611, quoting in part *North Associates v. Bell* (1986) 184 Cal.App.3d 860, 865.) We are not persuaded.

Habersham did not defend against the causes of action in the first amended cross-complaint by asserting the 2006 Ferree escrow agreement as negating liability or excusing performance of any duty alleged in Mills's cross-complaint. Instead, Habersham defended on grounds Mills's cross-complaint wrongly lumped together all of the cross-defendants in a grand scheme to defraud the plaintiff investors. Contrary to Habersham's argument, merely "pointing to" the 2006 Ferree escrow agreement does not trigger the agreement's fee-shifting clause. As *Santisas* holds, contractual attorney fees are available only to the extent allowed by the language of the fee shifting provision. (*Santisas*, *supra*, 17 Cal.4th 599, 608.) Here, the 2006 Ferree escrow agreement fee-shifting provision cannot be read to encompass the causes of action in Mills's first amended cross-complaint because the cross-action focused on tort law that is separate from the parties' obligations in the escrow process.

We reject Habersham's reliance on this court's decision in *Thompson v. Miller* (2003) 112 Cal.App.4th 327. *Thompson* involved an action by minority shareholders

10

who claimed the majority shareholder had defrauded them by withholding information about the company when offering to repurchase shares. (*Id.* at pp. 330-332.) The minority shareholders received $.16 per share about a year before the company was bought by a larger company for $7 per share. (*Id.* at p. 332.) The majority shareholder prevailed at trial and sought attorney fees under the share purchase agreement each of the plaintiffs had signed. (*Id.* at p. 333.) Plaintiffs argued, and the trial court agreed, the share purchase agreement was not implicated in their action. (*Id.* at p. 334-335.) This court reversed on grounds the majority shareholder had relied on the share purchase agreement in defending based on language disclaiming that the minority shareholders relied on any representations about the company by the majority shareholder. (*Id.* at pp. 336-337.) Here, by contrast, the 2006 Ferree escrow agreement does not provide Habersham with a defense against the causes of action in the first amended cross-complaint. The first amended cross-complaint did not mention the Ferree escrow agreement, and Habersham's answer mentioned only the attorney fee provision in the escrow agreement. The "affirmative defense" alleged by Habersham constituted an assertion of entitlement to fees rather than a defense to the allegations in Mills's cross-complaint.

Our conclusion that the attorney fee provision in the 2006 Ferree escrow agreement was not triggered by Mills's cross-complaint or Habersham's answer obviates the need to consider whether (1) Habersham was the prevailing party for purposes of attorney fees, (2) Mills properly challenged the time and activities for which attorney fees where claimed, or (3) whether the amount of fees claimed by Habersham was reasonable. We deny Habersham's request for attorney fees on appeal on the basis of the 2006 Ferree escrow agreement's fee shifting clause. Habersham, not being entitled to its trial court

11

attorney fees, is not entitled to its appellate court attorney fees under the 2006 Ferree escrow agreement.

## DISPOSITION

The order denying attorney fees and costs is affirmed.  Mills, Potoczak, & Company shall recover its costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1) & (2).)


                                                   HOCH      , J.


We concur:


      RAYE     , P. J.


      ROBIE     , J.