# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ROBERT S. LEE; GINA STEVENS;
LAURA STEVENS,
*Counter-claimants-cross-claimants-*
*Appellants,*

and

STEVE LEE; BOBBIE BILL LEE;
WILLIAM LEE,
*Plaintiffs-counter-defendants-cross-*
*defendants,*

v.

WEST COAST LIFE INSURANCE
COMPANY,
*Defendant-counter-defendant-*
*counter-claimant-Appellee.*

No. 11-55026

D.C. No.
2:09-cv-06789-
PA-VBK

OPINION

Appeal from the United States District Court
for the Central District of California
Percy Anderson, District Judge, Presiding

Argued and Submitted
May 9, 2012—Pasadena, California

Filed July 31, 2012

Before: Kim McLane Wardlaw, Richard A. Paez, and
Johnnie B. Rawlinson, Circuit Judges.

Opinion by Judge Paez

8629

## COUNSEL

Benjamin Blakeman, Esq. and Burton Mark Senkfor, Esq., Law Office of Burton Mark Senkfor, Los Angeles, California, for the counter-claimants-cross-claimants-appellants.

Brent Dorian Brehm and Glenn R. Kantor, Kantor & Kantor LLP, Northridge, California, for the plaintiffs-counter-defendants-cross-defendants.

Linda B. Oliver, Reed Smith LLP, San Francisco, California, for the defendant-counter-defendant-counter-claimant-appellee.

## OPINION

PAEZ, Circuit Judge:

This case, which involves a dispute over the proceeds of a life insurance policy, raises the following issue: Does the fed-

eral interpleader remedy shield a negligent stakeholder from tort liability for its creation of a conflict over entitlement to the interpleaded funds? We hold that it does not, and that a claimant may seek to recover all damages directly and proximately caused by the negligent stakeholder's conduct.

## I.

## A.

On March 13, 1998, West Coast Life Insurance Company ("West Coast") issued a life insurance policy with a death benefit of $800,000 to the late Steve Lee, Sr. Steve Sr. was the original owner of the policy. William Lee, Steve Sr.'s brother, was the original beneficiary. In the subsequent years, West Coast received numerous change of ownership and beneficiary forms from members of the Lee family. At issue is a policy change form signed and executed in July 2005, purporting to change the ownership and beneficiaries of the policy to Robert Lee, Bobbie Bill Lee, and Steve Lee, Jr. Bobbie and Steve Jr. are Steve Sr.'s nephews. Robert is Steve Sr.'s grandson.

Robert, Bobbie, and Steve Jr. executed the aforementioned change forms in West Coast's San Francisco office with the help of West Coast's Director of Policy Administration, James Davis. Davis erroneously instructed Bobbie and Robert to sign as the existing owners of the policy, when in fact Steve Jr. was an existing owner and Robert was not. Davis also erroneously failed to ask Steve Jr. to sign a change of beneficiary form which would have transferred a 62.5% interest to Robert as a beneficiary. Nonetheless, Davis witnessed Bobbie and Robert's signatures and West Coast approved and recorded a change of beneficiary as follows: Robert, 62.5%, Steve Jr., 19%, Bobbie, 18.5%. Relying on the validity of the July 2005 changes, Robert paid premiums due on the policy until Steve Sr.'s death approximately four years later.

The Lee family members made several additional, subsequent changes to the policy's ownership and beneficiaries. The final change occurred in December of 2008 when Robert Lee and Gina Stevens became the sole beneficiaries. Steve Sr. died in January 2009. Robert and Gina then submitted claim forms to West Coast. In response, West Coast informed Robert and Gina that the July 2005 changes were improperly executed, and therefore that they had no interest in the policy. In March 2009, upon learning that he retained the interest in the policy that he held in 2005, Bobbie submitted a claim form to West Coast. In April of 2009, West Coast responded by contacting all parties involved regarding the disputed claims, urging them to reach a mutual agreement regarding payment of the insurance policy benefits, and informing them that it would file an interpleader action if no agreement could be reached. The parties were unable to reach an agreement.

## B.

In August of 2009, Steve Jr., Bobbie, and William Lee (collectively, "plaintiffs") filed suit against West Coast in the Los Angeles Superior Court alleging claims for breach of contract and breach of the covenant of good faith and fair dealing under California law. West Coast removed the case to federal court invoking diversity jurisdiction, filed an answer and counterclaim in interpleader[1], deposited $800,000 plus

---

[1]West Coast's counterclaim does not specify whether it is premised on rule or statutory interpleader. "For statutory interpleader, 28 U.S.C. § 1335, there must be diversity between the adverse claimants. For interpleader under [R]ule 22(1) predicated on diversity jurisdiction, there must be diversity between the stakeholder on one hand and the claimants on the other." *Gelfgren v. Republic Nat'l. Life Ins. Co.*, 680 F.2d 79, 81 n.1 (9th Cir. 1982). Otherwise stated, statutory interpleader "allows so-called 'minimal' diversity, as distinguished from complete diversity, and also requires only that $500 be in controversy in lieu of the usual . . . requirement." *Libby, McNeill, and Libby v. City Nat'l. Bank*, 592 F.2d 504, 507 n.3 (9th Cir. 1978) (internal citation omitted). Rule 22 further provides that rule interpleader "does not supercede or limit" the statutory interpleader rem-

accrued interest with the district court, and added Gina and Laura Stevens[2] as counterdefendants. Robert, Gina, and Laura (collectively, "counterclaimants") filed counterclaims for negligence and declaratory relief against West Coast, and cross-claims against the plaintiffs.

West Coast moved for partial summary judgment, which the district court granted in West Coast's favor as to its interpleader claim and on the claims sounding in contract. The plaintiffs and counterclaimants then reached a settlement to distribute the interpleaded funds amongst themselves, and the district court entered an order approving the distribution. The district court, without prompting by the parties, then amended its summary judgment order to grant summary judgment in West Coast's favor as to counterclaimants' claim for attorney's fees, ruling that West Coast's liability for attorney's fees incurred in litigating over ownership of the stake was "cut off" by the interpleader action. The district court concluded that counterclaimants' negligence claim against West Coast was the only claim remaining to be tried.[3]

At the pretrial conference, the district court asked the parties to brief what damages counterclaimants could recover should they succeed on the merits of their negligence claim. Counterclaimants argued that their damages included the amount of the insurance proceeds allocated to the plaintiffs pursuant to their settlement ($290,000) and the attorney's fees

edy, and that statutory interpleader actions must be conducted in accordance with the Federal Rules of Civil Procedure. Fed. R. Civ. P. 22(b); *see also* Wright, Miller & Kane, Federal Practice & Procedure: Civil 3d § 1708 (2001). Here, the jurisdictional requirements of statutory interpleader were satisfied, as there was complete diversity between the parties and the amount in controversy far exceeded the jurisdictional minimum.

[2]Laura Stevens held an interest in the policy from 2006-2008 and purported to transfer her interest to Gina in 2008.

[3]Counterclaimants argue that they preserved additional claims for trial, namely, their estoppel claims. We discuss these claims *infra*.

incurred in litigating their claims against the plaintiffs.[4] At a subsequent pretrial conference, the parties stipulated to a trial on a record consisting of written declarations and stipulated facts, and to West Coast's filing of a motion for a judgment as a matter of law under Federal Rule of Civil Procedure 52(c).[5]

The district court subsequently granted West Coast's motion. The court did not address the merits of counterclaimants' negligence claim, reasoning that they had failed to allege any cognizable damages flowing from West Coast's alleged negligent conduct.[6]

---

[4]Counterclaimants claimed entitlement to recover attorney's fees incurred in litigation against the plaintiffs under California's tort-of-another doctrine. "Under California law, it is a well-established principle that attorney['s] fees incurred through instituting or defending an action as a direct result of the tort of another are recoverable damages. Attorney['s] fees in this context are to be distinguished from attorney's fees *qua* attorney's fees, such as those the plaintiff incurs in suing the tortfeasor defendant. Rather, when a defendant's tortious conduct requires the plaintiff to sue a third party, or defend a suit brought by a third party, attorney['s] fees the plaintiff incurs in this third party action are recoverable as damages resulting from a tort in the same way that medical fees would be part of the damages in a personal injury action." *Third Eye Blind, Inc. v. Near North Entm't Ins. Serv., LLC*, 26 Cal. Rptr. 3d 452, 463 (Cal. Ct. App. 2005) (internal quotation marks and citations omitted); *see also Brandt v. Super. Ct.*, 37 Cal. 3d 813, 817 (Cal. 1985) ("When an insurer's tortious conduct reasonably compels the insured to retain an attorney to obtain the benefits due under a policy, it follows that the insurer should be liable in a tort action for that expense. The attorney's fees are an economic loss—damages—proximately caused by the tort. These fees must be distinguished from recovery of attorney's fees *qua* attorney's fees, such as those attributable to the bringing of the bad faith action itself.") (internal citation omitted).

[5]The parties' stipulation and the district court's subsequent orders refer to the Rule 52(c) motion as a motion for a directed verdict. Because the motion is properly considered under Rule 52(c), we will refer to it as a motion for judgment throughout this opinion.

[6]The district court also found that counterclaimants had not properly pled estoppel as an independent theory of liability.

Counterclaimants timely appealed. We have jurisdiction under 28 U.S.C. § 1291, and we reverse.

## II.

"In reviewing a judgment following a bench trial, this court reviews the district court's findings of fact for clear error and its legal conclusions de novo." *Price v. U.S. Navy*, 39 F.3d 1011, 1021 (9th Cir. 1994) (citing *Tonry v. Sec. Experts, Inc.*, 20 F.3d 967, 970 (9th Cir. 1994)). "The same standard applies to the district court's involuntary dismissal of a claim under Rule 52(c)." *Id.* (citations omitted). When deciding a motion under Rule 52(c), the district court is "not required to draw any inferences in favor of the non-moving party; rather, the district court may make findings in accordance with its own view of the evidence." *Ritchie v. United States*, 451 F.3d 1019, 1023 (9th Cir. 2006).

## III.

**[1]** Both Rule 22 and the interpleader statute allow a party to file a claim for interpleader if there is a possibility of exposure to double or multiple liability. 28 U.S.C. § 1335; Fed. R. Civ. P. 22(a)(2). "The purpose of interpleader is for the stakeholder to 'protect itself against the problems posed by multiple claimants to a single fund.' " *Mack v. Kuckenmeister*, 619 F.3d 1010, 1024 (9th Cir. 2010) (quoting *Minn. Mut. Life Ins. Co. v. Ensley*, 174 F.3d 977, 980 (9th Cir. 1999)); *see also Michelman v. Lincoln Nat'l Life Ins. Co.*, ___ F.3d ___, 2012 WL 2855815, at *5 (9th Cir. 2012). "This includes protecting against the possibility of court-imposed liability to a second claimant where the stakeholder has already voluntarily paid a first claimant. But it also includes limiting litigation expenses, which is not dependent on the merits of adverse claims, only their existence." *Mack*, 619 F.3d at 1024 (citation omitted).

"An interpleader action typically involves two stages. In the first stage, the district court decides whether the require-

ments for [a] rule or statutory interpleader action have been met by determining if there is a single fund at issue and whether there are adverse claimants to that fund." *Id.* at 1023 (quoting *Rhoades v. Casey*, 196 F.3d 592, 600 (5th Cir. 1999)). "If the district court finds that the interpleader action has been properly brought the district court will then make a determination of the respective rights of the claimants." *Id.* at 1023-24 (citation omitted).

**[2]** "The protection afforded by interpleader takes several forms. Most significantly, it prevents the stakeholder from being obliged to determine at his peril which claimant has the better claim . . . ." Wright, *supra*, 3d § 1702; *see also id.* at § 1704 ("[I]t is thought that the stakeholder should not be compelled to run the risk of guessing which claimants may recover from the fund."). By contrast, interpleader protection generally does not extend to counterclaims that are not claims to the interpleaded funds. "Certainly when the stakeholder is an interested party and when one of the claimants asserts that the stakeholder is independently liable to him, the interposition of a counterclaim is appropriate. Indeed, in most instances of this type, the counterclaim will be compulsory and the court will exercise supplemental jurisdiction over it . . . ." Wright, Miller & Kane, Federal Practice & Procedure: Civil 2d § 1715 (1986) (footnote omitted); *see also* 44B Am. Jur. 2d Interpleader § 4 ("Interpleader is a procedural device not intended to alter substantive rights. It is not [the] function of an interpleader rule to bestow upon the stakeholder immunity from liability for damages that are unrelated to the act of interpleading, such as negligence in preserving the fund.") (footnotes omitted).

The Supreme Court's decision in *State Farm Fire & Cas. Co. v. Tashire*, 386 U.S. 523 (1967), aptly illustrates this point. There, the insurer of a truck driver whose vehicle had collided with a bus brought an interpleader action in federal court in Oregon. Many of the bus passengers had been injured and several suits had been filed against the drivers and owners

of the two vehicles in California state courts. *Id.* at 525-26. In its complaint in the Oregon district court, the insurer asserted that, at the time of the collision, it had in force an insurance policy with respect to the driver of the truck providing for bodily injury liability up to $10,000 per person and $20,000 per occurrence, and for legal representation of the driver in actions covered by the policy. It asserted that the actions already filed in California and others which it anticipated would be filed far exceeded, in aggregate damages sought, the amount of its maximum liability under the policy. *Id.* at 526. Accordingly, the insurer paid into the court the sum of $20,000 and asked the court (1) to require all claimants to establish their claims against the driver and his insurer in that single proceeding and in no other, and (2) to discharge it from all further obligations under its policy—including its duty to defend the driver in lawsuits arising from the accident. *Id.*

The district court issued an order requiring the defendant-victims to show cause why they should not be restrained from filing or prosecuting "any proceeding in any state or United States Court affecting the property or obligation involved in this interpleader action, and specifically against the plaintiff[-insurance company] and the defendant[-driver]." *Id.* at 527. The district court then issued a temporary injunction along the lines that the insurance company sought. *Id.* On appeal, we reversed, reasoning that the insurance company could not invoke federal interpleader until the claims against the insured, the alleged tortfeasor, had been reduced to judgment. *Id.* at 528.

The Supreme Court reversed our judgment. It reasoned that,

> Were an insurance company required to await reduction of claims to judgment, the first claimant to obtain such a judgment or to negotiate a settlement might appropriate all or a disproportionate slice of the fund before his fellow claimants were able to

establish their claims. The difficulties such a race to judgment pose for the insurer, and the unfairness which may result to some claimants, were among the principal evils the interpleader device was intended to remedy.

*Id.* at 533 (footnote omitted).

Nonetheless, the fact that the insurer had properly stated an interpleader claim did not "entitle it to an order both enjoining prosecution of suits against it outside the confines of the interpleader proceeding and also extending such protection to its insured, the alleged tortfeasor." *Id.* This was so, the Court reasoned, because "the scope of the litigation, in terms of parties and claims, was vastly more extensive than the confines of the 'fund,' the deposited proceeds of the insurance policy. In these circumstances, the mere existence of such a fund cannot, by use of interpleader, be employed to accomplish purposes that exceed the needs of orderly contest with respect to the fund." *Id.* at 533-34.

The Court contrasted the case before it with the typical interpleader action, explaining:

There are situations, of a type not present here, where the effect of interpleader is to confine the total litigation to a single forum and proceeding. One such case is where a stakeholder, faced with rival claims to the fund itself, acknowledges—or denies—his liability to one or the other of the claimants. In this situation, the fund itself is the target of the claimants. It marks the outer limits of the controversy. It is, therefore, reasonable and sensible that interpleader, in discharge of its office to protect the fund, should also protect the stakeholder from vexatious and multiple litigation.

*Id.* at 534 (footnote omitted). The case before it, the Court explained, was "another matter." *Id.*

Here, an accident has happened. Thirty-five passengers or their representatives have claims which they wish to press against a variety of defendants: the bus company, its driver, the owner of the truck, and the truck driver. The circumstance that one of the prospective defendants happens to have an insurance policy is a fortuitous event which should not of itself shape the nature of the ensuing litigation. . . . And an insurance company whose maximum interest in the case cannot exceed $20,000 and who in fact asserts that it has no interest at all, should not be allowed to determine that dozens of tort plaintiffs must be compelled to press their claims—even those claims which are not against the insured and which in no event could be satisfied out of the meager insurance fund—in a single forum of the insurance company's choosing.

*Id.* at 534-35. The Court recognized that its "view of interpleader means that it cannot be used to solve all the vexing problems of multiparty litigation arising out of a mass tort. But interpleader was never intended to perform such a function, to be an all-purpose 'bill of peace.' " *Id.* at 535.

**[3]** From this discussion, we distill certain fundamental principles: The stake marks the outer limits of the stakeholder's potential liability where the respective claimants' entitlement to the stake is the sole contested issue; however, where the stakeholder may be independently liable to one or more claimants, interpleader does not shield the stakeholder from tort liability, nor from liability in excess of the stake. *Id.*; *see also New York Life Ins. Co. v. Lee*, 232 F.2d 811, 814 (9th Cir. 1956) (stating, in the context of statutory interpleader, "[w]e think that Congress in the enactment of the interpleader statute did not intend thus to wipe out the substantial claims of persons asserting rights against [insurance] companies. . . . 'The purpose of the interpleader statute was to give the stakeholder protection, but in nowise to change the rights of

the claimants by its operation. . . . We think Congress had no intention to permit . . . destruction of acquired rights [under state law], if indeed it had power so to do.' ") (quoting *Sanders v. Armour Fertilizer Works*, 292 U.S. 190, 200 (1934)).

The district court recognized these principles, and applied them in its initial summary judgment ruling when it found that counterclaimants' negligence claim survived the interpleader action. The district court nonetheless granted West Coast's Rule 52(c) motion because it concluded that attorney's fees are not recoverable in interpleader actions absent a showing of bad faith, and that counterclaimants' attempt to recover the amount disbursed to the plaintiffs in settlement as damages would require relitigation of entitlement to the insurance benefits. This reasoning was in error.

**[4]** "It is generally recognized that interpleader 'developed in equity and is governed by equitable principles.' " *Aetna Life Ins. Co. v. Bayona*, 223 F.3d 1030, 1033-34 (9th Cir. 2000) (quoting *Lummis v. White*, 629 F.2d 397, 399 (5th Cir. 1980), *rev'd on other grounds by Cory v. White*, 457 U.S. 85 (1982); *Metro. Life Ins. Co. v. Marsh*, 119 F.3d 415, 418 (6th Cir. 1997) ("[I]nterpleader is fundamentally equitable in nature.")). Accordingly, many courts have held that those who have acted in bad faith to create a controversy over the stake may not claim the protection of interpleader. *See, e.g.*, *Kent v. N. Cal. Reg'l Office of Am. Friends Serv. Comm.*, 497 F.2d 1325, 1328 (9th Cir. 1974) ("Interpleader, which is an equitable remedy, is not available to one who has voluntarily accepted funds knowing they are subject to competing claims.") (citations omitted); *Farmers Irrigating Ditch & Reservoir Co. v. Kane*, 845 F.2d 229, 232 (10th Cir. 1988) ("It is the general rule that a party seeking interpleader must be free from blame in causing the controversy, and where he stands as a wrongdoer with respect to the subject matter of the suit or any of the claimants, he cannot have relief by interpleader.") (collecting cases); *see also* 44B Am. Jur. 2d Interpleader § 7 ("The equitable doctrine of 'clean hands' applies

to interpleader actions. The party seeking interpleader must do equity, not have caused the conflicting claims, and be free from blame in causing the controversy.") (footnotes omitted).[7]

[5] Here, however, counterclaimants have not alleged that West Coast acted in bad faith, nor do they contend that the interpleader remedy was, or should have been, unavailable. Rather, they allege that West Coast's negligent actions in 2005 caused the instant controversy, and claim damages flowing from that negligence. As the Supreme Court's discussion in *Tashire* makes clear, interpleader was not intended to extinguish independent tort claims, nor intended to relieve the stakeholder from liability in excess of the stake. The district court's conclusion that counterclaimants were required to show that West Coast acted in *bad faith* in order to claim attorney's fees as damages that flow from West Coast's *negligence* is without support.

[6] Nor does counterclaimants' negligence claim arise from West Coast's failure to resolve the controversy over entitlement to the insurance proceeds in their favor. But for Davis' erroneous recording of the July 2005 change forms, counterclaimants allege that they would not have been forced to litigate their adverse claims against the plaintiffs. In other words, West Coast's alleged negligence directly and proximately caused counterclaimants to forgo $290,000 to which they claim they were rightfully entitled, and caused them to incur attorney's fees in litigating this action. Their damages flowed not from West Coast's filing of an interpleader claim

---

[7]Wright & Miller suggest that modern interpleader analysis should focus not on the stakeholder's interest in the controversy or lack thereof, but solely on the "threat of multiple vexation." Wright, *supra*, 3d § 1706. They suggest that "[c]ontemporary procedure, with its flexible and liberal provisions for joinder of parties and claims, for separate trial of separate issues, for assuring that the right to a jury trial on a particular issue or claim is not impaired, and for shaping the relief to the necessities of the particular case is well adapted to disposing of interpleader cases even when independent liability [of the stakeholder] is asserted." *Id.*

but from its alleged negligent conduct. For this reason, counterclaimants are not required to show that West Coast acted in bad faith in creating the controversy in order to recover damages directly and proximately flowing from its alleged negligent conduct. The district court's holding to the contrary threatens to convert the interpleader action into a species of get-out-of-jail-free card, a device that would shield tortfeasors from liability for their negligent mistakes and limit their total financial exposure to the value of the stake. As the Supreme Court explained in *Tashire*, this was never the intention of the interpleader remedy. *See* 386 U.S. at 535.[8]

*Prudential Ins. Co. of America v. Hovis*, upon which the district court heavily relied, is not to the contrary. 553 F.3d 258 (3d Cir. 2009). *Hovis* involved a dispute over life insurance proceeds between the decedent's son and the decedent's fiancee. *Id.* at 259-60. Robert Hovis, the decedent's fiancee, was a Prudential employee, and became romantically involved with the decedent after selling her life insurance policies. *Id.* at 259. Shortly before her death, Hovis submitted a change of beneficiary form to Prudential, changing the primary beneficiary of a particular policy from his fiancee's son to himself. Hovis requested that the change be made on an expedited basis because of his fiancee's declining health. *Id.* at 260. Prudential had an internal policy generally prohibiting

---

[8]Indeed, several courts outside our Circuit have recognized that interpleader does not protect the stakeholder from total liability in excess of the value of the stake. *See William Penn Life Ins. Co. v. Viscuso*, 569 F. Supp. 2d 355, 361 (S.D.N.Y. 2008) (stating that, upon filing an interpleader claim, an insurer is liable to a single beneficiary as to the value of the stake, but may nonetheless face "potential counterclaim liability to the non-beneficiary defendant" such that it "will be liable to all claimants in a total amount greater than the value of the Policy") (citing *Ashton v. Josephine Bay Paul and C. Michael Paul Found., Inc*., 918 F.2d 1065, 1069 (2d Cir. 1990) ("[W]e reject the argument that interpleader jurisdiction is improper where claims against the stakeholder potentially exceed the value of the interpleaded fund.")); *see also Bradley v. Kochenash*, 44 F.3d 166, 169 (2d Cir. 1995) (noting that interpleader was intended to protect the stakeholder only from unjustified multiple liability).

its sales persons from having an ownership or beneficiary interest in its clients' policies. Hovis required approval from his managing director and Prudential's compliance division in order to obtain an exemption from that policy, but had not secured approval when he submitted the changes. *Id.* Prudential therefore began an investigation into whether to grant an exception in Hovis's case, but did not complete its investigation before the policyholder's death approximately one month later. *Id.*

Hovis and the policyholder's son both submitted claims to the policy proceeds. In lieu of determining who was entitled to the funds, Prudential filed an interpleader action. *Id.* at 260-61. Hovis counterclaimed alleging, *inter alia*, negligence, bad faith, and breach of fiduciary duty arising from Prudential's failure to make the requested policy change in a timely manner. *Id.* at 261. Prudential moved for summary judgment as to Hovis' counterclaims, arguing that its action in interpleader extinguished those claims. The district court granted summary judgment in Prudential's favor, and Hovis appealed. *Id.* at 261-62.

In affirming the district court's judgment, the Third Circuit explained that, while in the typical case "interpleader protection does not extend to counterclaims that are not claims to the interpleaded funds," *id.* at 264, Hovis did not present the typical case in that "each of [his] counterclaims concern[ed] Prudential's failure to resolve its investigation in his favor and pay out the life insurance proceeds to him." *Id.* Therefore, "none of the counterclaims [wa]s truly independent of who was entitled to the life insurance proceeds, which is the issue the interpleader action was brought to settle." *Id.* at 264-65.

The court concluded that exposing Prudential to tort liability where Hovis' tort claims arose from Prudential's failure to resolve the controversy in his favor was contrary to "the very idea behind the interpleader remedy—namely, that a stakeholder [should] not [be] obliged at his peril to determine

which claimant has the better claim." *Id.* at 265 (citation and internal quotation marks omitted) (alteration in original). The court therefore held that Prudential's interpleader action shielded it from further liability to Hovis because a stakeholder's "failure to choose between the adverse claimants (rather than bringing an interpleader action) cannot itself be a breach of a legal duty." *Id.* (citation omitted). The court cautioned, however, that its

> "decision in no way turn[ed] the interpleader device into an all-purpose get-out-of-jail-free card[,]" but merely stood for the proposition that "where a stakeholder is blameless with respect to the existence of the ownership controversy, the bringing of an interpleader action protects it from liability to the claimants both for further claims to the stake and for any claims directly relating to its failure to resolve that controversy." *Id.* at 265 (citation omitted).

**[7]** As the foregoing discussion reveals, *Hovis* is consistent with the general principles of interpleader, namely, that a disinterested stakeholder may not be subjected to liability for its failure to resolve the controversy over entitlement to the stake in one claimant's favor, but that a stakeholder whose alleged tort caused the controversy is not absolved of liability by filing an interpleader action. Here, counterclaimants seek damages wholly separate and apart from West Coast's failure to award them the policy proceeds: They seek damages flowing from Davis' allegedly negligent failure to correctly execute the July 2005 change forms. As alleged in the counterclaim, West Coast, unlike Prudential, is in no way blameless for the instant controversy.

**[8]** For these reasons, we follow the Supreme Court's direction in *Tashire* and join our sister circuits in holding that the federal interpleader remedy does not shield a negligent stakeholder from tort liability for its creation of a conflict over entitlement to the interpleaded funds. It follows logically from

this principle that a claimant may seek to recover all damages directly and proximately caused by the negligent stakeholder's conduct.

## IV.

The district court's grant of West Coast's Rule 52(c) motion is reversed and the case is remanded for further proceedings consistent with this opinion. We note that the pretrial conference order, which the district court orally deemed filed, included additional claims that were to be tried, namely, counterclaimants' estoppel claims. Consistent with the pretrial conference order, those claims were properly preserved for trial. *See* Fed. R. Civ. P. 16(e). We express no views on the merits of these additional claims.

REVERSED and REMANDED.