**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| STILLAGUAMISH TRIBE OF INDIANS, | No. 24-5511 |
| Petitioner - Appellant, | D.C. Nos. 2:17-sp-00003-RSM 2:70-cv-09213-RSM |
| v. | |
| UPPER SKAGIT INDIAN TRIBE; SWINOMISH INDIAN TRIBAL COMMUNITY; TULALIP TRIBES OF WASHINGTON, | MEMORANDUM* |
| Respondents - Appellees, | |
| and | |
| LUMMI INDIAN NATION, PUYALLUP TRIBE OF INDIANS, QUINAULT INDIAN NATION, SAUK-SUIATTLE INDIAN TRIBE, STATE OF WASHINGTON, HOH INDIAN TRIBE, QUILEUTE INDIAN TRIBE, MUCKLESHOOT INDIAN TRIBE, SUQUAMISH TRIBE, SKOKOMISH INDIAN TRIBE, SQUAXIN ISLAND TRIBE, PORT GAMBLE S'KLALLAM TRIBE, JAMESTOWN S'KLALLAM TRIBE, NISQUALLY INDIAN TRIBE, | |

---

\*      This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Real-parties-in-interest.

Appeal from the United States District Court
for the Western District of Washington
Ricardo S. Martinez, District Judge, Presiding

Argued and Submitted July 10, 2025
Seattle, Washington

Before: GRABER, CLIFTON, and BENNETT, Circuit Judges.

For centuries, the Stillaguamish Tribe of Indians ("Stillaguamish") has fished the river bearing the same name, which flows into Puget Sound. In an 1855 treaty, Stillaguamish and neighboring tribes ceded the lands they occupied to the United States in exchange for "[t]he right of taking fish at usual and accustomed grounds and stations." Treaty of Point Elliott, Jan. 22, 1855, 12 Stat. 927, 927–28. The landmark case *United States v. Washington* (*Final Decision #1*), 384 F. Supp. 312 (W.D. Wash. 1974), defined the treaty term "usual and accustomed grounds and stations" ("U&A") as "every fishing location where members of a tribe customarily fished from time to time at and before treaty times." *Id.* at 332. *Final Decision #1* also determined the U&As of all party tribes (for Stillaguamish, the Stillaguamish River), *see id.* at 348–82, and issued a permanent injunction authorizing the tribes to invoke the district court's continuing jurisdiction for future U&A determinations, *id.* at 419, *as modified by United States v. Washington*, 18 F. Supp. 3d 1172, 1213–16 (W.D. Wash. 1993).

Stillaguamish did so in 2017, claiming that its U&A extended beyond the riverine waters of the Stillaguamish River to the marine waters east of Whidbey Island, including Port Susan, Saratoga Passage, Skagit Bay, Penn Cove, Holmes Harbor, and Deception Pass ("Claimed Waters"). Following an eight-day bench trial in 2022, the district court granted the Upper Skagit Indian Tribe's Federal Rule of Civil Procedure 52(c) motion for judgment against Stillaguamish on partial findings, concluding that Stillaguamish's case-in-chief failed to establish U&A in the Claimed Waters by a preponderance of the evidence. Stillaguamish appealed, and we remanded for further factual findings. *Stillaguamish Tribe of Indians v. Washington* (*Stillaguamish I*), 102 F.4th 955, 962 (9th Cir. 2024) (per curiam). After making additional findings, the district court issued an amended order granting the Rule 52(c) motion and again concluded that Stillaguamish fell short of its evidentiary burden. Stillaguamish appealed.

In reviewing a district court's judgment on partial findings under Rule 52(c), we "review[] the district court's findings of fact for clear error and its legal conclusions de novo." *Lee v. W. Coast Life Ins. Co.*, 688 F.3d 1004, 1009 (9th Cir. 2012) (quoting *Price v. U.S. Navy*, 39 F.3d 1011, 1021 (9th Cir. 1994)). "When deciding a motion under Rule 52(c), the district court is 'not required to draw any inferences in favor of the non-moving party; rather, the district court may make findings in accordance with its own view of the evidence.'" *Id.* (quoting *Ritchie v.*

3                                                          24-5511

*United States*, 451 F.3d 1019, 1023 (9th Cir. 2006)). We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

1.      The district court's factual findings are sufficient. In *Stillaguamish I*, we determined that "meaningful appellate review" required greater insight into what the district court made of Stillaguamish's evidence, including "what evidence it rejected." 102 F.4th at 961–62. The findings in the amended order are "explicit enough to give [us] a clear understanding of the basis of the trial court's decision." *Id.* at 961 (quoting *Alpha Distrib. Co. of Cal. v. Jack Daniel Distillery*, 454 F.2d 442, 453 (9th Cir. 1972)).

2.      The district court did not apply the law of the case incorrectly. We held in *Stillaguamish I* that the district court had "correctly applied the controlling law of *United States v. Washington*" in its original order and that there was no "misapplication of the law of the case in the district court's failure to draw certain inferences" from Stillaguamish's evidence, including the tribe's "evidence of villages, travel, and presence." 102 F.4th at 960. The district court did not change its application of the law of the case in its amended order. Stillaguamish does not argue that a recognized exception to the law of the case doctrine applies,[1] so we

---

[1] "We have recognized exceptions to the law of the case doctrine . . . where '(1) the decision is clearly erroneous and its enforcement would work a manifest injustice, (2) intervening controlling authority makes reconsideration appropriate, or (3) substantially different evidence was adduced at a subsequent trial.'" *Gonzalez v. Arizona*, 677 F.3d 383, 389 n.4 (9th Cir. 2012) (en banc) (quoting *Jeffries v. Wood*,

decline to "reexamin[e] an issue previously decided by the same court," or a prior court, in a "previous disposition" of the same case. *United States v. Jingles*, 702 F.3d 494, 499 (9th Cir. 2012) (quoting *Richardson v. United States*, 841 F.2d 993, 996 (9th Cir. 1988); *United States v. Lummi Indian Tribe*, 235 F.3d 443, 452 (9th Cir. 2000)). Stillaguamish contends that *Stillaguamish I*'s vacatur of the district court's original order permits relitigation of the issues. For this proposition, Stillaguamish cites caselaw on automatic vacatur after a case becomes moot on appeal, but mootness is not at issue here. *See Dilley v. Gunn*, 64 F.3d 1365, 1369 (9th Cir. 1995); *Log Cabin Republicans v. United States*, 658 F.3d 1162, 1167 (9th Cir. 2011) (per curiam), *overruled on other grounds by Bd. of Trs. of the Glazing Health & Welfare Tr. v. Chambers*, 941 F.3d 1195 (9th Cir. 2019) (en banc).

3. The district court did not commit reversible error in its findings on Stillaguamish's expert evidence. Stillaguamish challenges the district court's determination that evidence from the following experts was "speculative as to the question of fishing in the Claimed Waters": (1) Dr. Barbara Lane, an anthropologist who had served as a key witness in prior proceedings, starting with *Final Decision #1*; (2) Dr. Chris Friday, an ethnohistorian retained by Stillaguamish; and (3) Dr. Deward Walker, an anthropologist retained by the Tulalip Tribes. Stillaguamish also

_____

114 F.3d 1484, 1489 (9th Cir. 1997) (en banc)). None of these exceptions applies here.

disputes the district court's finding of fact in paragraph 10(h), concerning Dr. Friday's introduction of a prior statement by Dr. Carroll Riley, an anthropologist who had testified in earlier proceedings. We review the district court's factual findings, including the weight afforded to witness testimony, for clear error. *See Lee*, 688 F.3d at 1009 (quoting *Price*, 39 F.3d at 1021); *United States v. Lummi Indian Tribe*, 841 F.2d 317, 319 (9th Cir. 1988).

It was not clear error for the district court to conclude that Dr. Lane's statements from testimony in 1975 and 1983 and from a 1974 private letter, introduced through Dr. Friday, were speculative as to Stillaguamish marine fishing. The district court explained that Dr. Friday gave "[n]o satisfactory explanation" for "why the Court should rely on his interpretation of the opinions of prior expert witnesses [including Dr. Lane], or on the words of these experts that were not included in prior subproceedings." And as the district court found, Dr. Lane's opinions about Stillaguamish fishing relied on an affidavit by Stillaguamish Chief James Dorsey—which, as Dr. Friday testified, "does not state that the Stillaguamish fished anywhere in marine waters." "[I]n light of the record viewed in its entirety," "the district court's account of the evidence [from Dr. Lane] is plausible." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573–74 (1985). "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Id.* at 574. Thus, even if we might have weighed Dr. Lane's

statements differently, we may not reverse the district court's determination. *Id.*

The district court also did not clearly err in finding Dr. Friday's testimony was speculative as to Stillaguamish marine fishing. The record reveals that, while he ably recounted the work of other scholars, Dr. Friday did not point to evidence of fishing activity by Stillaguamish in the Claimed Waters at or before treaty times. As Dr. Friday testified, even the treaty-time accounts on which he based his opinion—such as Stillaguamish tribal elder Sally Oxstein's account of her family's travels and settler Samuel Hancock's account of his encounters with the tribe—do not mention fishing in marine waters. The district court's finding that Dr. Friday's testimony did not support a "reasonable inference of marine fishing" was plausible on this record.

Nor was it clear error for the district court to find that the testimony of Tulalip's expert, Dr. Walker, was speculative. Dr. Walker testified that the basis for his opinion that Stillaguamish fished in Port Susan at treaty times was his "hav[ing] been . . . so informed by both Stillaguamish, but also in the report by Dr. Friday, but perhaps . . . mostly by the Tulalip themselves." As the district court noted, a later declaration by Dr. Walker narrowed the scope of his opinion from "the entirety of Port Susan" to "solely . . . areas in Port Susan north of Kayak Point [where he] was aware that Tulalip had agreed to Stillaguamish fishing in that area." The district court did not clearly err in finding Dr. Walker's testimony "unhelpful . . . to establish the marine fishing areas of the Stillaguamish people" at treaty times.

It was clear error for the district court to mischaracterize a statement from Dr. Riley as absent from the trial record. Paragraph 10(h) of the amended order finds that a statement by Dr. Riley, from his testimony in a 1956 Indian Claims Commission proceeding, that Stillaguamish "'came down to Port Susan and lower Skagit Bay for clamming and fishing' . . . was actually not presented in direct examination" of Dr. Friday. But the record reflects that Dr. Friday did quote that statement by Dr. Riley. Stillaguamish does not "specifically and distinctly" argue that the district court's contrary finding amounts to harmful error warranting remand, so such a challenge is forfeited. *Terpin v. AT & T Mobility LLC*, 118 F.4th 1102, 1113 (9th Cir. 2024) (quoting *Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003)). Even if it were not forfeited, we would find this error to be harmless given the little weight the district court assigned to Dr. Riley's opinions in light of the rest of the record. *See Cooling Sys. & Flexibles, Inc. v. Stuart Radiator, Inc.*, 777 F.2d 485, 487–89 (9th Cir. 1985) (concluding district court's errors were harmless in affirming then-Rule 41(b) judgment), *overruled on other grounds as recognized by Apple Comput. Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1448 (9th Cir. 1994); *Ritchie*, 451 F.3d at 1023 n.7 (explaining then-Rule 41(b) is Rule 52(c)'s predecessor); *see also* Fed. R. Civ. P. 61.

4.     The district court did not err in concluding that Stillaguamish failed to establish U&A in the Claimed Waters. "Whether, given [the district court's findings

of] fact[], disputed waters were usual and accustomed fishing grounds is a mixed question of law and fact, which we review *de novo*." *Lummi Indian Tribe*, 841 F.2d at 319. The district court did not apply an erroneous standard of proof in requiring "evidence of fishing at treaty time." *Stillaguamish I*, 102 F.4th at 960 (emphasis omitted). While Stillaguamish emphasizes the role of expert, tribal elder, village, travel, and presence evidence in other tribes' successful U&A claims, the records in those cases were less equivocal on fishing activity.[2] And "[i]nferences made by the district court in past sub-proceedings do not necessarily bind the court to come to the same legal conclusions in others where the evidence is more equivocal." *Id.* Given its factual findings here, the district court did not err in concluding that Stillaguamish's case-in-chief failed to show that the tribe's U&A extended beyond the Stillaguamish River to the Claimed Waters.

---

[2] *See, e.g.*, *Final Decision #1*, 384 F. Supp. at 364–65 (Makah U&A where evidence showed villages and seasonal camps "provided access to places for taking fish from the salmon runs" and "at treaty times the Makah took chinook, sockeye, chum and coho salmon . . . using fishing techniques which included beach seining, spearing and trolling"); *id.* at 367 (Muckleshoot U&A where evidence showed "[v]illages and weir sites were often located together" and "at least three groups of important weir sites" were used by the tribe "to intercept returning salmon on those rivers"); *id.* at 372 (Quileute U&A where evidence showed pre-treaty "villages were located where the conditions of the river were best for catching fish and, consequently, each village obtained its principal supply from a trap located nearby . . . built in shallow water"); *United States v. Washington*, 459 F. Supp. 1020, 1059 (W.D. Wash. 1978) (Tulalip U&A where "the findings of the [Indian] Claims Commission of the Indian coastal and river villages, from which fishing activities may be presumed, coincide[d] with the findings of Dr. Lane and the testimony of [tribal elder] Mrs. Dover" "regarding marine fishery areas").

24-5511

**AFFIRMED.**

24-5511