2023 IL App (1st) 221104

FIFTH DIVISION
November 3, 2023

No. 1-22-1104

NOTICE: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | |
|---|---|
| ACER AMERICA CORPORATION, <br><br> Plaintiff-Appellant, <br><br> v. <br><br> SMITHAMUNDSEN LLC, <br><br> Defendant-Appellee. | ) <br> ) <br> ) <br> ) <br> ) Appeal from the <br> ) Circuit Court of <br> ) Cook County. <br> ) <br> ) |
| SMITHAMUNDSEN LLC, <br><br> Third-Party Plaintiff/Cross-Appellant, <br><br> v. <br><br> ORRICK, HARRINGTON & SUTCLIFFE LLP, <br><br> Third-Party Defendant/Cross-Appellee. | ) No. 2019 L 001715 <br> ) <br> ) <br> ) Honorable <br> ) Jerry A. Esrig, <br> ) Judge Presiding <br> ) <br> ) <br> ) |

JUSTICE MIKVA delivered the judgment of the court.
Presiding Justice Mitchell and Justice Lyle concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The circuit court's grant of summary judgment in defendant law firm's favor is affirmed; the firm's failure to file plaintiff's lawsuit against its insurance broker in California rather than in Illinois could not form the basis for a claim of legal malpractice where that underlying suit was time-barred in both states.

¶ 2     Plaintiff Acer America Corporation (Acer) engaged AON Trade Credit Insurance Services, Inc., and AON Risk Services (collectively, Aon), to procure credit insurance protecting it against the risk of default by its retail customers. One of those customers, Circuit City Stores, Inc. (Circuit City), filed for bankruptcy, and the bankruptcy trustee filed a preference claim against Acer seeking a return of payments Circuit City had made to Acer in the 90 days prior to the filing of the bankruptcy petition. The policy Aon had procured for Acer did not cover such claims, and Acer ultimately litigated the claim before settling it at a loss.

¶ 3     More than two years from the denial of coverage, but less than two years from the date on which Acer settled the preference claim, Acer hired defendant SmithAmundsen to assert a professional negligence claim against Aon, which the firm filed in Cook County, Illinois. That suit was dismissed as time-barred, on the basis that the two-year statutory limitations period for such claims began to run when the insurer denied coverage. We affirmed that dismissal on appeal. *Acer America Corp. v. AON Trade Credit Insurance Services, Inc.*, 2017 IL App (1st) 170830-U.

¶ 4     Acer then initiated this action against SmithAmundsen, alleging that the firm negligently failed to file the lawsuit against Aon in California, where a two-year statute of limitations also applies, but where claims do not accrue until a plaintiff has suffered actual damages. Acer maintained that it was not damaged until it settled with the bankruptcy trustee, and a suit filed against Aon in California would therefore have been timely. The circuit court granted SmithAmundsen's motion for summary judgment, agreeing with the firm that Acer suffered actual damages shortly after the denial of coverage, when it incurred legal expenses to have outside counsel advise it on the coverage problem and was forced to negotiate with the bankruptcy trustee from a compromised position.

¶ 5     Acer now appeals and, for the reasons that follow, we affirm.

¶ 6                                    I. BACKGROUND

¶ 7     The underlying facts, summarized below from the parties' pleadings and the affidavits and supporting documents attached to their summary judgment briefing, are generally undisputed.

¶ 8                          A. Acer's Underlying Claim Against Aon

¶ 9     Acer is a California corporation that sells computers, monitors, tablets, and similar products to large retail customers, often receiving payment for those goods 30-90 days after delivery. Acer has historically obtained credit insurance to cover the risk of default by its customers, and in 2005 Aon, an insurance broker headquartered in Illinois, solicited Acer to become the company's broker for such coverage. Acer provided Aon with a copy of its then existing policy, which provided Acer with, among other things, coverage in the event of default by a creditor who subsequently filed for bankruptcy protection and an endorsement protecting Acer from preference claims made by a bankruptcy trustee. Aon proposed a new policy, through insurer Euler Hermes (Euler), that Acer understood would provide it with the same protections and a higher coverage limit. Acer agreed to use Aon as its broker, and beginning in 2006, Aon placed Acer's credit insurance with Euler.

¶ 10     On November 10, 2008, one of Acer's retail customers, Circuit City, filed for Chapter 11 bankruptcy protection in the Eastern District of Virginia. Sections 547 and 550 of the United States Bankruptcy Code allow a bankruptcy trustee to file a preference claim to recover any property transferred by the debtor to another party in the 90 days preceding the filing of the bankruptcy petition that the court determines constituted a "preferential transfer." 11 U.S.C. § 547(b) (2006); 11 U.S.C. § 550 (2006). On November 5, 2010, the Circuit City bankruptcy trustee did just that, seeking the return of approximately $32 million that Circuit City had paid to Acer in the 90 days preceding the filing of Circuit City's bankruptcy petition.

¶ 11     In an April 29, 2011, e-mail confirming their previous telephone conversations, Euler

informed Acer that because the credit insurance policy Aon had procured for it only covered preference claims made and settled or adjudicated within 90 days of the filing of the bankruptcy petition, the claim asserted by the Circuit City bankruptcy trustee "[did] not appear to be covered." However, due to what it viewed as its "excellent relationship" with Acer, Euler was willing to contribute, as a "commercial gesture," a portion of the total amount that Acer would have to pay back to Circuit City.

¶ 12    Following this exchange, Acer consulted its outside counsel, Womble Carlyle Sandridge & Rice, LLP (Womble), to assess the preference claim filed by the trustee against Acer and the insurance issue. Womble prepared a detailed memorandum on May 3, 2011, outlining Acer's defenses to the preference claim and the likelihood of Acer obtaining coverage if required to pay back the money it had received from Circuit City. Womble concluded that there was a good chance that some but not all of the payments Acer received from Circuit City in the 90 days before it filed for bankruptcy would be considered payments made in the ordinary course of business and not preferential payments, but that the bankruptcy trustee was more than 60% likely to obtain a judgment of at least $8 million against Acer. Because the Euler policy was an indemnification policy, any settlement or judgment would be Acer's responsibility, and Acer would then need to seek indemnification from Euler. Womble did not agree with Euler that the policy provided no coverage for preference claims but acknowledged that a preference claim "[did] not fit neatly within the typical claims asserted under [that] Policy." According to Womble, Acer's chances of prevailing on a claim against Euler were, "at best, 50% and more realistically around 40%."

¶ 13    Acer attempted to mediate the claim with the bankruptcy trustee on May 11, 2011, but no settlement was reached.

¶ 14    On June 4, 2013, a representative of Acer sent an email to a representative of Euler.

Although "nothing [had] been settled or agreed yet" because mediation was about to begin again and it was "still possible that [Acer would] win [the] case and nothing [would] be lost," the e-mail stated, Acer's chief financial officer wanted to better understand why Euler was "not fully covering this case." The Euler representative wrote back to explain that although Acer's current policy covered preference claims like the ones Acer faced, the policy in effect when Circuit City's debt to Acer arose did not.

¶ 15 The Acer representative forwarded this exchange to individuals at Aon, saying, "[o]f course, we still hope that the court will find in our favour [*sic*] and there will be no loss, either to Acer or to Euler Hermes," but "if we lose the case, then the issues are now more clear for me." His understanding was that Acer had no coverage for the preference claim, that Euler's offer to make a partial payment as a commercial gesture was something the insurer had no legal obligation to do, and that Acer would "suffer a loss" of any amount it was ordered to repay that exceeded the amount of that voluntary payment. "I have to advise you," the Acer representative went on, "that we will hold Aon responsible for failing to ensure that [we were] properly covered against this preference claim." In the Acer representative's view, Aon "had an obligation to identify potential risks [and] make sure [Acer was] fully covered" but had "failed to do so." He concluded by letting the Aon representatives know that they should advise their company of this potential liability "in case the court [did] not find in [Acer's] favor."

¶ 16 Over two years after Acer first engaged Womble to advise it in the wake of Euler's denial of coverage, Acer retained Orrick, Herrington & Sutcliffe (Orrick) to investigate a potential broker negligence action against Aon. Orrick wrote to Aon on November 22, 2013, explaining that while the preference claim remained unresolved, it might "ultimately result in a multi-million dollar loss to Acer that should have been covered under the Policy." Orrick had investigated the matter and

believed that such coverage was a standard feature typically included in trade credit policies and that Aon's failure to procure a policy including such coverage "may have breached the standard of care owed to Acer." Orrick invited Aon to discuss resolving the matter and, "[t]o allow those discussions to take place," asked if it would agree to enter into a tolling agreement. Aon did not agree to the tolling agreement and no substantive discussions regarding the resolution of a potential claim against Aon took place following that correspondence.

¶ 17    Acer eventually settled the preference claim with the bankruptcy trustee on June 27, 2014, and as a result of that settlement, some of Acer's invoices to Circuit City returned to the status of unpaid.

¶ 18    Acer hired SmithAmundsen on April 11, 2016, and on May 26, 2016, the firm filed a lawsuit asserting a single count of broker malpractice against Aon in the Circuit Court of Cook County. The circuit court dismissed the suit as time-barred, on the basis that in Illinois the two-year statutory limitations period for such claims (735 ILCS 5/13-214.4 (West 2014)) began to run when Euler denied coverage for the preference claim. The court acknowledged that Acer's argument that its claim against the firm did not accrue until the settlement was signed and damages were sustained "made a lot of sense," but observed that Illinois courts had "drawn a bright line which [the court] was bound to follow." In Illinois, "the statute of limitations runs when the duty is breached, not when the damages are sustained," the court explained; the fact that "damages are not immediately ascertainable does not postpone the accrual of a claim." *Acer America Corp. v. AON Trade Credit Insurance Services, Inc.*, No. 16 L 5286 (Cir. Ct. Cook County, Feb. 27, 2017).

¶ 19    This court affirmed that dismissal on appeal. *Acer America Corp.*, 2017 IL App (1st) 170830-U. We noted that "while June 27, 2014, may have been the date Acer's damages were sustained," it was "on June 4, 2013, at the very latest," that "Acer indisputably knew Euler had

denied coverage under the insurance policy," and that was when, under Illinois law, "Acer knew or should have known of its injury." *Id.* ¶¶ 36, 38.

¶ 20                                    B. This Litigation

¶ 21    Acer initiated this legal malpractice action against SmithAmundsen on February 15, 2019, alleging that the firm should have filed Acer's lawsuit against Aon not in Illinois but in California, where a two-year statute of limitations also applies (West's Ann. Cal. C.C.P. § 339(1) (2014)), but where claims do not accrue until a plaintiff has suffered actual damages. Acer maintained that it was not damaged until it settled with the bankruptcy trustee, and a suit filed against Aon in California would therefore have been timely.

¶ 22    SmithAmundsen moved to dismiss the complaint pursuant to section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615 (West 2018)). It argued that Acer's claim against Aon would have been untimely even if filed in California. The circuit court denied the motion to dismiss in a one-page handwritten order on November 1, 2019. No transcript from the hearing on the motion appears in the record.

¶ 23    Following the denial of its motion to dismiss Acer's complaint, SmithAmundsen sought and was granted leave to file a third-party complaint for contribution against Orrick, the firm Acer hired to investigate potential claims against Aon before it retained SmithAmundsen.

¶ 24    On December 21, 2021, Acer filed a motion for partial summary judgment asking the court to reject SmithAmundsen's defense that the claim against Aon would have been untimely even if filed in California. SmithAmundsen countered with its own motion for summary judgment, and the court stayed Acer's motion while briefing was completed on SmithAmundsen's motion. The firm argued that under California law, Acer's claim against Aon accrued in May 2011, when Acer incurred legal fees to address Euler's denial of coverage and when Acer's ability to settle the

preference claim favorably was compromised. Acer argued in response that the fees it paid to Womble were part of Womble's representation of Acer in the Circuit City bankruptcy, were not legally cognizable or recoverable under the Euler indemnity policy, and therefore could never have been claimed as damages arising from Aon's negligence in failing to secure a preference endorsement.

¶ 25    Following a hearing held on July 22, 2022, the court granted SmithAmundsen's motion for summary judgment. The court agreed with SmithAmundsen that as early as May 2011, Acer had suffered two types of damage. It had incurred legal expenses to have Womble assess its position following Euler's denial of coverage, something it only had to do "because [Aon] didn't do what it was supposed to do." Although the court agreed with Acer's counsel that no case cited by either party was exactly on point, it explained that "the logical extension of what the [California] courts [were] saying [was] that when you start incurring expenses because the broker hasn't gotten you the coverage that you think you are entitled to get that that's when your damages begin to run." The court determined that Acer was also damaged as a result of its compromised negotiating position, stating, "[y]ou know the day you get the memo from your own lawyer at the latest you know that your claim for coverage is disputed and that you're going to have to compromise that claim. And that's exactly what you then do. That's your damage."

¶ 26    The court denied as moot a motion filed by SmithAmundsen to strike the affidavit of Beatriz Duenas, Acer's Assistant General Counsel. Although the court noted several problems with the affidavit—including the lack of an adequate foundation, the inclusion of legal conclusions, and the failure to attach referenced documents—that would have led it to grant the motion, Acer's counsel conceded at argument that "as it relate[d] to the summary judgment" motion, "the affidavit as framed [was] inconsequential." The only information contained in the

affidavit that was relevant to the statute of limitations, counsel noted, was the date SmithAmundsen was hired, and that was not disputed.

¶ 27    In light of its finding, as a matter of law, that SmithAmundsen had no liability to Acer, the court also dismissed as moot the firm's third-party complaint for contribution against Orrick.

¶ 28    Acer now appeals.

¶ 29                                    II. JURISDICTION

¶ 30    The circuit court entered its order granting SmithAmundsen's motion for summary judgment on July 27, 2022, and Acer timely filed its notice of appeal from that order the same day. SmithAmundsen timely filed its notice of cross-appeal, challenging that portion of the circuit court's order dismissing its third-party complaint against Orrick as moot, on August 17, 2022. We have jurisdiction over these appeals pursuant to Illinois Supreme Court Rules 301 (eff. Feb. 1, 1994) and 303 (eff. July 1, 2017), governing appeals from final judgments entered by the circuit court in civil cases.

¶ 31                                    III. ANALYSIS

¶ 32    Acer urges us on appeal to reverse the circuit court's grant of summary judgment in favor of SmithAmundsen on Acer's claim of legal malpractice. Summary judgment is proper where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2020). We review an order granting or denying a motion for summary judgment *de novo*. *Pielet v. Pielet*, 2012 IL 112064, ¶ 30.

¶ 33    Acer argues the circuit court erred as a matter of law by concluding that SmithAmundsen's decision to file suit against Aon in Illinois instead of California could not form the basis of a legal malpractice claim because Acer's claim against Aon was time-barred in either state. The parties

agree that if Acer had brought its claim for professional negligence against Aon in California, the two-year limitations period set out in section 339(1) of the California Code of Civil Procedure (California Code) would have applied. West's Ann. Cal. C.C.P. § 339(1) (2014). They also agree that California law governing the accrual of causes of action differs significantly from Illinois law. As this court noted when it affirmed the dismissal of Acer's complaint against Aon in the Circuit Court of Cook County, "Illinois law is clear that the statute of limitations begins to run at the moment coverage is denied, not when the damages are sustained." *Acer America Corp.*, 2017 IL App (1st) 170830-U, ¶ 38 (citing *West American Insurance Co. v. Sal E. Lobinco & Son Company, Inc.*, 69 Ill. 2d 126, 132 (1977)).

¶ 34     Under California law, by contrast, a cause of action does not accrue until "the occurrence of the last element essential to the cause of action." (Internal quotation marks omitted.) *Howard Jarvis Taxpayers Association v. City of La Habra*, 25 Cal. 4th 809, 815 (2001). And one element of a claim for professional negligence is "actual loss or damage resulting from the negligence." *Carlton v. Quint*, 77 Cal. App. 4th 690, 699 (2000). As the California Supreme Court has explained, "[t]he mere breach of a professional duty, causing only nominal damages, speculative harm, or the threat of future harm—not yet realized—does not suffice to create a cause of action for negligence." *Budd v. Nixen*, 6 Cal. 3d 195, 200 (1971).

¶ 35     The sole issue before us, then, is when, under the generally undisputed timeline of events described above, Acer first suffered actual loss or damage as a result of Aon's purported negligence sufficient to trigger the limitations period in section 339(1) of the California Code. Acer insists that it was not damaged until June 27, 2014, when the settlement it reached to resolve the bankruptcy trustee's preference claim was finalized, because only then did it become obligated to return any of the money Circuit City had paid it. SmithAmundsen would have us conclude, as the

circuit court did, that Acer was damaged much sooner—in May 2011—when it incurred out-of-pocket legal expenses to have Womble evaluate its position following Euler's denial of coverage and when it was forced to negotiate with the bankruptcy trustee from a significantly weakened bargaining position. If Acer is correct, then when it hired SmithAmundsen in June 2014 it still had a viable claim against Aon that the firm could have filed in California. If SmithAmundsen is correct, then Acer had no viable claim against Aon in either state, and the decision to file in one state rather than the other could not support a claim of legal malpractice.

¶ 36    Although our own supreme court has the ability to certify a question for the California Supreme Court's discretionary review, we have no similar authority (see Cal. R. Ct. 8.548 (eff. Jan. 1, 2016) (providing that the court of last resort of any state may ask the California Supreme Court to, in its discretion, decide a case-dispositive question of California law for which there is no controlling precedent)). We must therefore consider this question of California law based on the existing authorities, which we agree with Smith Amundsen answer the question before us but which, we agree with the circuit court, do not present a case that is on all fours with this one.

¶ 37    Acer maintains that it suffered no actual damages until the preference claim was settled with the bankruptcy trustee. That, Acer points out, was the first time that it became obligated to return any of the money paid to it by Circuit City in the months leading up to the bankruptcy. In support of this argument, Acer relies on *Williams v. Hilb, Rogal & Hobbs Insurance Services of California, Inc.*, 177 Cal. App. 4th 624 (2009), for the proposition that a cause of action for insurance broker malpractice can never accrue until judgment is entered in the underlying case. We do not read that case so broadly. In *Williams*, a business that dealt with hazardous materials hired an insurance broker to procure for it all necessary insurance. *Id.* at 627. An employee of the business who was injured in a fire obtained a multimillion dollar judgment against the owner of

the business, who then sued the insurance broker for negligence for failing to procure a policy that included workers compensation coverage. *Id.* The broker contended on appeal that the claim was barred by California's two-year statute of limitations, which it argued began to run when the employee was injured. *Id.* at 641. At that point, the broker maintained, liability was inescapable and only the amount of that liability remained to be determined. *Id.* The California appellate court disagreed. Relying on its decision in *Walker v. Pacific Indemnity Co.*, 183 Cal. App. 2d 513, 514-16 (1960), the court concluded that although the plaintiff "became aware of his potential exposure shortly after the fire" and "knew of his potential liability when [the employee] filed his lawsuit, no actual injury occurred until judgment was entered against him." *Williams*, 177 Cal. App. 4th at 641-42. Because the plaintiff was defended by its insurer throughout the litigation and indemnified in the amount of the policy limit despite the lack of workers compensation coverage, "[u]ntil judgment was entered against him in excess of that amount, other litigation results were possible" and "no appreciable harm from the lack of workers compensation insurance coverage" was sustained. *Id.* at 642. As the court made clear, " 'it is uncertainty as to the fact of damage, rather than its amount' " that delays the trigger of the statute of limitations. *Id.* (quoting *Walker*, 183 Cal App. 2d at 517).

¶ 38    We agree with SmithAmundsen that, unlike the plaintiff in *Williams*, Acer incurred actual out-of-pocket legal expenses as a direct result of its broker's purported negligence long before any judgment was entered against it in the bankruptcy action. Its counsel Womble not only represented it in the bankruptcy proceedings—which it would have done in any event—but had to separately expend time investigating the situation that the lack of coverage had placed Acer in. Because Acer incurred reasonable expenses for that additional work, unlike in *Williams*, "the fact of any damage at all" was not "completely uncertain until judgment in [the underlying action]" was entered.

(Internal quotation marks omitted.) *Id.* at 642.

¶ 39    The California Supreme Court's analysis in *Budd*, 6 Cal. 3d 195, supports our understanding that the expenditure of such legal fees can trigger the statute of limitations. The plaintiff in *Budd* sued its attorney for failing to assert a viable defense when it was sued for breaching a contract with a real estate broker to list certain property for sale. *Id.* at 197-99. The plaintiff maintained that, for purposes of the two-year statute of limitations in section 339(1) of the California Code, he did not suffer damage until the formal entry of judgment in the real estate broker's case against him. *Id.* at 202. The *Budd* court concluded, however, that the plaintiff may have suffered damage earlier when, "as he alleged in his complaint, he was compelled to incur and pay attorney's fees and legal costs and expenditures" (internal quotation marks omitted) for a second attorney to assist him with the matter. *Id.* at 201. He "would have had a viable claim, as tort damages," for the fees he paid his second attorney, the court explained, "to the extent that such fees compensated that attorney for his efforts to extricate [the] plaintiff from the effect of [his first attorney's] negligence." *Id.* at 202. Because neither party had briefed or submitted affidavits relating to this issue, the court viewed the accrual of the plaintiff's claim as a question of fact, the resolution of which would have to await trial or a motion for summary judgment with declarations directed to that issue. *Id.* at 203-204. The *Budd* court's analysis makes clear, however, that such fees, if established, constitute a cognizable injury sufficient to trigger California's two-year statute of limitations.

¶ 40    Here, billing entries contained in the record on appeal make clear what was left unresolved in *Budd*: Acer incurred out-of-pocket legal expenses necessitated by Aon's purported negligence. Acer insists that it would always have been responsible for the payment of its own legal fees in the bankruptcy action, regardless of whether the Euler policy provided coverage for preference claims,

and that those fees would simply not have been recoverable in an action against Aon for broker negligence. While that may be true, at least some of the fees incurred by Acer were a direct result of Aon's failure to procure coverage for the preference claim. As the lengthy memorandum Womble prepared for Acer in May 2011 makes clear, Womble was not simply representing Acer in the bankruptcy proceedings. It was specifically tasked with assessing the fallout of Aon's failure to procure adequate coverage. Womble's fees were incurred, at least in part, for advising Acer regarding how it could, to use the *Budd* court's words, "extricate itself" from the effects of Aon's negligence.

¶ 41    This is also consistent with the court's analysis in *Jordache Enterprises, Inc. v. Brobeck, Phleger & Harrison*, 18 Cal. 4th 739 (1998), relied on by SmithAmundsen. There, an apparel manufacturer sued its former lawyers, who had been retained to defend it in an action brought by a competitor, for failing to assert a timely claim for liability insurance benefits that would have covered the underlying action. *Id.* at 739. The manufacturer hired new counsel to pursue coverage and argued that its claim against its first lawyers did not accrue until that coverage litigation was finally resolved. *Id.* at 739, 753. The *Jordache* court disagreed, concluding that the fees the manufacturer had incurred to contest the insurer's defense of late notice constituted an actual injury sufficient to trigger the applicable statutory limitations period. *Id.* at 752. In the court's view, "[t]he coverage litigation's resolution was relevant to [the lawyer's] negligence only insofar as it potentially affected the *amount* of damages [the manufacturer] might recover." (Emphasis added.) *Id.* at 753. The distinction, the court explained, was one between "an actual, existing injury that might be *remedied or reduced* in the future, and a speculative or contingent injury that might or might not *arise* in the future." (Emphases in original.) *Id.* at 754.

¶ 42    Acer's counsel attempted to distinguish *Budd* and *Jordache* at oral argument, on the basis

14

that those cases involved claims of legal malpractice governed, not by section 339(1) of the California Code, which clearly governs the claim Acer could have had against Aon, but by section 340.6 (West's Ann. Cal. C.C.P. § 340.6). This is not accurate, as the decision in *Budd*, which predated the enactment of section 340.6 by some years, did indeed apply section 339 to a legal malpractice claim. *See Budd*, 6 Cal. 3d at 199. Moreover, it does not matter. Although section 339(1) and section 340.6 have different limitation periods, both have the same trigger to start those periods. They both provide that the limitations period does not begin to run until the plaintiff has suffered an actual injury caused by the defendant's conduct. See West's Ann. Cal. C.C.P. § 339(1) (2014) (providing that a cause of action under that section must be brought "[w]ithin two years" but "shall not be deemed to have accrued until the discovery of the loss or damage suffered by the aggrieved party"); *id.* § 340.6 (providing that an action for the wrongful act or omission of an attorney commences within one year of discovery or four years of the conduct, whichever occurs first, but that the limitations period "shall be tolled during the time that *** (1) The plaintiff has not sustained actual injury"). Thus, the court's holding in *Jordache* that actual injury or damage has occurred once a plaintiff has hired legal counsel to mitigate or investigate the alleged professional negligence is applicable even if it was decided based on section 340.6 rather than section 339(1).

¶ 43    Acer makes a number of other arguments for why its payments to Womble cannot be considered damages in the claim it had against Aon. It points out that, under the American Rule, attorney fees are distinct from and cannot be considered tort damages. See *Prentice v. North American Title Guaranty Corporation, Alameda Division*, 59 Cal. 2d 618, 620 (1963) ("*General rule*: In the absence of some special agreement, statutory provision, or exceptional circumstances, attorney's fees are to be paid by the party employing the attorney." (Emphasis in original.)). And

it notes that the insurance policy itself was an indemnity only policy providing that Acer was responsible for all of its own legal costs. But, as Acer acknowledges, fees can be recoverable tort damages where, as in this case, they were incurred due to a dispute with some third party that is the alleged fault of the tortfeasor. This "tort-of-another" doctrine is an established principal recognized by the California Supreme Court in *Budd* and by the appellate court in *Jordache.* As the appellate court put it: "*Budd* simply recognized the established rule that attorney fees incurred as a direct result of another's tort are recoverable damages." *Jordache*, 18 Cal. 4th at 751.

¶ 44     The tort-of-another doctrine, as understood by the California courts, is well illustrated in *Third Eye Blind, Inc. v. Near North Entertainment Insurance Services, LLC*, 127 Cal. App. 4th 1311 (2005). There, a music group sued its insurance broker for failing to warn it that its general liability policy contained an exclusion that later resulted in a denial of coverage when the band was sued by one of its former members. *Id.* at 1315-16. In the litigation against the broker, the California appellate court held that the group could recover the attorney fees it had incurred to litigate coverage with the insurer, even though it ultimately prevailed in that litigation. *Id.* at 1320-26. Because the broker's negligence caused the insurer to raise a reasonable defense to coverage that would otherwise have been avoided, the band was damaged by having to incur additional fees in connection with the coverage dispute. *Id.* at 1321-22. In so holding, the court was applying the "well-established principle that attorney fees incurred through instituting or defending an action as the direct result of the tort of another are recoverable damages." (Internal quotation marks omitted.) *Id.* at 1324. The court explained that "[a]ttorneys fees in this context are to be distinguished from 'attorney's fees *qua* attorney's fees,' such as those the plaintiff incurs in suing [a] tortfeasor defendant" and are instead akin to "medical fees [that] would be part of the damages in a personal injury action." *Id.* at 1325. The *Third Eye Blind* court saw no reason why this tort-

of-another doctrine should not apply "to fees incurred as a result of an insurance broker's alleged negligence" (*id.*), and we likewise see no reason why it should not apply here.

¶ 45    Although Acer acknowledges this authority, it insists that the tort-of-another doctrine does not apply here. According to Acer, the California Supreme Court's explanation of that doctrine in *Prentice*, 59 Cal. 2d at 620, limits it to situations in which *litigation* must be initiated or defended against as a result of the defendant's negligence. The *Prentice* court noted, citing section 914 of the Restatement of Torts (Restatement (First) of Torts § 914 (1939)), that "[a] person who through the tort of another has been required to act in the protection of his interests by bringing or defending an action against a third person is entitled to recover compensation for the reasonably necessary loss of time, attorney's fees, and other expenditures thereby suffered or incurred." *Id.* at 620. Acer argues that it was never required to "institute or defend" an action because it "never sued Euler." And although it did defend itself against the preference complaint filed by the bankruptcy trustee, it points out that the bankruptcy action would have been instituted regardless of Aon's negligent failure to procure coverage for such claims. Thus, according to Acer, these fees do not come within the tort-of-another exception.

¶ 46    What Acer fails to appreciate, however, is the broader rule that reasonably incurred expenses proximately caused by a defendant's wrongful conduct generally *are* recoverable as damages. See *Stearman v. Centex Homes*, 78 Cal. App. 4th 611, 625 (2000) (holding that the plaintiffs in a construction defect case could recover as damages fees paid to professionals who investigated the problems in order to formulate an appropriate repair plan). As we read the relevant authorities, the tort-of-another doctrine arose where this general rule intersected with the American Rule, which holds that parties *to litigation* are generally responsible for their own attorney fees.

¶ 47    The California supreme court recognized this in *Oasis West Realty, LLC v. Goldman*, 51

17

Cal. 4th 811, 826 (2011), where it held that a plaintiff's complaint for breach of fiduciary duty and professional negligence filed against its former lawyer could proceed in the face of a challenge under California's anti-SLAPP (strategic lawsuit against public participation) statute. *Id.*at 827. The court concluded that the plaintiff had "set forth a *prima facie* case of actual injury and entitlement to damages" when it alleged that its former lawyer's conduct had made it necessary for the plaintiff to "to protect its rights by retaining legal counsel," not to file suit on its behalf, but "to prepare a letter demanding that [the lawyer] cease and desist from further misconduct." *Id.* The court referenced "the established rule that attorney fees incurred as a direct result of another's tort are recoverable damages," when they constitute an attempt "to avoid, minimize, or reduce the damage caused by [a tortfeasor's] wrongful conduct. (Internal quotation marks omitted.) *Id.*

¶ 48   *Apple Valley Unified School District v. Vavrinek, Trine, Day & Co.*, 98 Cal. App. 4th 934 (2002), cited by SmithAmundsen, provides another instructive example. The plaintiff there was a school district that sued its accounting firm, alleging that the firm's misrepresentations in an audit report induced it to provide state funds to a charter school that was not entitled to those funds. *Id.* at 934. The California appellate court concluded, for purposes of determining when the statutory limitations period was triggered, that "the out-of-pocket expenses the District incurred when it engaged its accountant *and legal counsel*, in an effort to determine the extent of the improper payments and arrange for reimbursement of funds improperly received, constituted actual injury for limitations purposes." (Emphasis added.) *Id.* at 949. Here, Acer likewise incurred expenses, in the form of nonlitigation legal fees for Womble's assessment of its position following Euler's denial of coverage, that it would not have incurred absent Aon's purported negligence. And just as in *Oasis* and *Apple Valley*, those fees constitute recoverable damages.

¶ 49   Acer repeatedly insisted at oral argument in this court that in *Lederer v. Gursey Schneider*

*LLP*, 22 Cal. App. 5th 508 (2018), the California appellate court flatly rejected the notion that fees incurred for a lawyer to perform investigative work can ever amount to damages sufficient to trigger a statute of limitations. This is a misreading of that case. The defendant in *Lederer* procured uninsured motorist coverage for the plaintiff with a policy limit well below what the plaintiff had requested, and the plaintiff sued the broker when her son was injured by an uninsured motorist. *Id.* at 512. The broker successfully moved for summary judgment, on the grounds that the cause of action accrued when the lack of coverage was discovered, and not later, when the insufficient funds were finally collected. *Id.* at 513. The California appellate court reversed. *Id.* It rejected the defendant's argument that the plaintiff suffered damages when her attorney first began to investigate the scope of her insurance coverage, on the grounds that the *evidence* in that case did not suggest that the attorney did anything more than represent the plaintiff and her son in his personal injury action and inquire into the existence of coverage as a routine discovery matter. *Id.* at 527. The decision in *Lederer* cited *Apple Valley* with approval as standing for the proposition that fees paid to attorneys to investigate can be the damages that trigger the statute of limitations. *Id.* at 526. However, *Lederer* distinguished *Apple Valley* on the basis that the facts in *Lederer* did not align with those in *Apple Valley. Id.* at 527.

¶ 50    Finally, we note that secondary sources support our reading of these California cases. Section 25.3 of California Affirmative Defenses, for example, titled "Accrual of causes of action generally," warns that overly simplified statements regarding the accrual of causes of action in California "belie the complexity of the subject." 2 Cal. Affirmative Def. § 25:3 (2d ed.). The authors note that "both a prospective plaintiff's uncertainty of the amount of damage and the fact that part or even most of the damages have not yet occurred *are irrelevant*." (Emphasis added.) *Id.* They advise that where a plaintiff "may be justifiably uncertain as to whether sufficient harm has

occurred to trigger the running of the statute of limitations," there are "two safe alternatives: file suit within the statutory period calculated from the first date on which any damage may have occurred or obtain a tolling agreement." *Id.* The authors go on, citing both *Jordache* and *Apple Valley*, to specify that "[t]he 'damage' that may be sufficient to trigger accrual *may be the obligation to pay an attorney or other person to attempt correction of the problem or to investigate the problem*" (emphasis added), such that "accrual may occur even if the larger part of the damage is still prospective." *Id.* Although secondary sources like this one are not binding, in this court or in the California courts, we find that they serve as a beneficial check on our reading of another state's authorities.

¶ 51    In sum, we agree with the circuit court that Acer was damaged in May 2011 when it incurred legal expenses to have Womble investigate and advise it specifically on how to deal with the lack of coverage for preference claims caused by Aon's purported negligence. This was work in addition to what Womble would otherwise have done if such coverage had been in place and was sufficient to trigger the two-year statute of limitations found in section 339(1) of the California Code. Any claim Acer could have asserted against Aon in California would thus have expired in May 2013, well before Acer hired SmithAmundsen to represent it. Summary judgment in SmithAmundsen's favor was proper.

¶ 52    Given this holding, we need not consider whether Acer was independently damaged following Euler's denial of coverage because it was forced to negotiate with the bankruptcy trustee from a compromised position.

¶ 53    And because we hold that SmithAmundsen was entitled as a matter of law to summary judgment in its favor on Acer's legal malpractice claim, we affirm the dismissal of the firm's third-party complaint for contribution against Orrick as moot.

¶ 54 We likewise affirm the denial of SmithAmundsen's motion to strike one of Acer's affidavits as moot, which Acer's counsel acknowledged contained no information relevant to the court's summary judgment ruling.

¶ 55 IV. CONCLUSION

¶ 56 For all of the above reasons, we affirm the circuit court's grant of summary judgment in favor of SmithAmundsen on Acer's claim of legal malpractice. Acer cannot establish that it was harmed by SmithAmundsen's decision to file Acer's lawsuit against its insurance broker in Illinois, rather than in California, where its claim was time-barred in both states when Acer retained SmithAmundsen to represent it.

¶ 57 Affirmed.